**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL 2724<br>16-MD-2724<br><br><br>HON. CYNTHIA M. RUFE |
| This Document Relates to:<br><br>*Molina Healthcare Inc. v. Actavis Elizabeth LLC, et al.*<br>*Humana Inc. v. Actavis Elizabeth LLC, et al.*<br>*Humana Inc. v. Actavis Elizabeth LLC, et al.*<br>*Humana Inc. v. Actavis Elizabeth LLC, et al.* | 20-CV-00695<br>18-CV-03299<br>19-CV-04862<br>20-CV-06303 |

<u>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISQUALIFY**</u>
<u>**PLAINTIFFS' COUNSEL AND LAW FIRM**</u>

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ............................................................................................... 1

II.   ARGUMENT ...................................................................................................... 2

    A.    Lowey's Opposition Cannot Avoid that Mr. Nielsen Violated Rule 1.11(c) ......... 2

        1.    Plaintiffs Do Not Have *All* Information Obtained by Mr. Nielsen ............. 3

        2.    Mr. Nielsen Possesses Information that Meets the Definition of "Confidential Government Information" under Rule 1.11(c) ..................... 6

        3.    Nielsen's "Confidential Government Information" Could be Used to the Material Disadvantage of Defendants ............................................. 11

    B.    Lowey's Opposition Cannot Save Mr. Nielsen's Violation of Rule 1.11(a) ........ 12

    C.    The *Boy Scout* Factors Favor Disqualification of Mr. Nielsen and Lowey .......... 14

III.  CONCLUSION ................................................................................................. 15

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Brown & Brown, Inc. v. Blumenthal*,
  1 A.3d 21 (Conn. 2010) ...............................................................................................8, 10

*Henry v. Del. River Joint Toll Bridge Comm'n*,
  2001 WL 1003224 (E.D. Pa. Aug. 24, 2001) .....................................................................14

*In re Boy Scouts of Am.*,
  35 F.4th 149 (3d Cir. 2022) ...............................................................................................14

*In re Nat'l Prescription Opiate Litig.*,
  2024 WL 3387288 ..........................................................................................................8, 10

*In re National Prescription Opiate Litigation*,
  2019 WL 1274555 (N.D. Ohio Mar. 20, 2019) .....................................................................7

*Jordan v. Phila. Hous. Auth.*,
  337 F. Supp. 2d 666 (E.D. Pa. 2004) ...................................................................................14

*People v. OptumRx Inc.*,
  2025 WL 2542288 (Cal. Ct. App. Sept. 4, 2025) ...........................................................8, 10

### STATUTES

CT Gen State § 35-42 .........................................................................................................10

CT Gen Stat § 35-42(c).........................................................................................................9

CT Gen Stat § 35-42(c)(1).....................................................................................................8

CT Gen Stat § 35-42(c)(2) .................................................................................................8, 9

CT Gen Stat § 35-42(e)..........................................................................................................1

### RULES

Rule 1.0(e)...........................................................................................................................12

Rule 1.11 .............................................................................................................................15

Rule 1.11(a)...........................................................................................................1, 2, 12, 13

Rule 1.11(a)(2).....................................................................................................................12

Rule 1.11(c)................................................................................................................... *passim*

Cal. Ct. R. 8.1115(a) .................................................................................................................8

## I.    INTRODUCTION

Lowey's Opposition ("Opp.") does nothing to counter that Mr. Nielsen violated Rules 1.11(c) and 1.11(a).  As to Rule 1.11(c), Lowey's argument boils down to Mr. Nielsen supposedly having no "confidential government information."  Opp. *generally*.  But Lowey cannot avoid that Mr. Nielsen has confidential information about Defendants from his government service.  At a minimum, this includes confidential information obtained via proffer meetings, settlement discussions, witness interviews, oral or written presentations and communications, work product, and privileged material.  Faced with this unavoidable fact, Lowey tries to narrow what constitutes "confidential government information" ("CGI") under Rule 1.11(c), arguing that the definition is limited to information that is "*compelled*."  Opp. at 2.  Yet, the word "compelled" cannot be found in the Rule, nor is that requirement found in the case law.  Indeed, Connecticut law expressly states that *all* information provided in an antitrust investigation—*voluntarily* or *subpoenaed*—"shall not be disclosed to the public."  CT Gen Stat § 35-42(e).  Rule 1.11(c) tracks this by defining CGI as information that "the government is prohibited from disclosing to the public."  PRPC 1.11(c).  The suggestion that CGI does not include information from confidential settlement negotiations, attorney proffers, interviews, and work product is untenable.

Similarly, Lowey argues its private clients "couldn't possibly" use any CGI to the material disadvantage of Defendants because Mr. Nielsen already provided certain information to the plaintiffs under a common interest agreement.  Putting aside whether that is true or permitted, that would not strip the protections of Rule 1.11(c).  Rule 1.11(c) protects against *anyone* using the information against Defendants, including the former government attorney who possesses the information.  To do so, the Rule prohibits the former government attorney from *representing* private clients to avoid prophylactically *any potential* use of the information.  It does not prohibit *possession* of the information.  If a government attorney could skirt the Rule by giving the

information that he or she obtained to private plaintiffs, it would gut the Rule. As Professor W. Bradley Wendel observes in the attached reply report ("Wendel Reply"), "plaintiffs' argument . . . is almost self-refuting, because it robs the individuals or entities to whom the information pertains of any control over the misuse of that information." Wendel Reply ¶ 2. The Rule's language makes clear that Defendants do not have to "trust" that Mr. Nielsen or his clients will not, even inadvertently, use his decade-long access to CGI to Defendants' disadvantage.

As to Rule 1.11(a), Lowey similarly takes a "trust us" approach in its Opposition, but that approach does not cure the Rule 1.11(a) violation. Rule 1.11(a) required Mr. Nielsen to obtain "informed consent" from the Connecticut Attorney General *before* representing Molina and Humana in these actions. Lowey insists that Mr. Nielsen studied the Rule and received the requisite "informed consent" yet proffers only a vague statement of non-objection dated three months after his representation started, with *no* evidence that Mr. Nielsen provided any relevant detail about the risks or alternatives to the Connecticut Attorney General. This statement of "non-objection" does not confirm that Mr. Nielsen received the requisite "informed consent" and merely reinforces the disregard of the ethical rules. Both Mr. Nielsen and Lowey should be disqualified to avoid further harm resulting from the ethical violations that have occurred.

## II.    ARGUMENT

### A.    Lowey's Opposition Cannot Avoid that Mr. Nielsen Violated Rule 1.11(c)

Lowey's entire argument under Rule 1.11(c) relies on the false premise that Mr. Nielsen does not possess "CGI," as that term is defined by Rule 1.11(c). *See* Opp. at 14-25. According to Lowey, "all" of the Connecticut Attorney General's "investigative files" are already in the hands of private plaintiffs, and therefore Mr. Nielsen has no more CGI. Lowey argues that because private plaintiffs already have everything important, there can be no material disadvantage to Defendants. This argument misstates the facts, misinterprets the law, and misunderstands the

purpose of Rule 1.11(c): private plaintiffs do not have "all" CGI possessed by Mr. Nielsen that can be used to Defendants' material disadvantage, and even if they did, their possession of this information does not cure Mr. Nielsen's violation of Rule 1.11(c).

### 1.    Plaintiffs Do Not Have *All* Information Obtained by Mr. Nielsen

Through sleight of hand, Lowey gives the misimpression that "all" information that Mr. Nielsen obtained during his decade-plus as Connecticut's lead government enforcer has already been provided Plaintiffs.[1]  This is not true, as Lowey and Mr. Nielsen acknowledge elsewhere.[2]

*First*, contrary to Lowey's suggestion, the Court's pre-trial orders do not require (or even permit) the sharing of *all* information in Mr. Nielsen's possession.  Those pre-trial orders apply to "just pre-existing business records" produced by certain individuals and entities under subpoena.[3] By their terms, those orders are limited to "documents collected pursuant to the Plaintiff States' subpoenas."  PEX 11 at 1 (defined as "*AG Documents*"); *see also* PEX 13.  Those orders further *exclude* from production much of the confidential information underlying this Motion:

> Access to certain documents created by a Party or Non-Party specifically for provision to the State Plaintiffs – such as **transmittal letters** to the State Plaintiffs, **presentations** to the State Plaintiffs, **documents created by counsel** for the purpose of aiding the State Plaintiffs' investigation, **white papers** to the State Plaintiffs, and **other correspondence** with the State Plaintiffs regarding the investigation – **will not be produced by the State Plaintiffs** . . . .

---

[1] Opp. at 1 ("The MDL Court and all plaintiff groups have taken significant steps over the past seven years to ensure that every plaintiff has access to all available information, thereby preventing any party from having an unfair advantage."); 2 ("Under these circumstances, where government investigatory materials have all been turned over in discovery in the MDL, Rule 1.11(c) has no application for multiple reasons."); and 25 ("*See* Cohen Rpt. at ¶55 ('Nielsen shared all material information, strategic roadmaps and insights with all Private Plaintiffs for years. . . .'").

[2] Opp. at 8 n.10 ("*See* PEX 10 at 40:17-24 ("it is efficient to provide the Private Plaintiffs with *some* information so that they can be on a level playing field . . . .") (emphasis added); *see also supra* at 4-5.

[3] Transcript of Oral Arguments on Discovery Motions 101:1 (July 11, 2018) (PEX 10).

PTO 70, ECF No. 841 Ex. A ¶ 12 (emphasis added). Indeed, the private plaintiffs explicitly disclaimed that they were seeking investigative files beyond underlying business records: "We're not seeking communications. We're not seeking written discovery of any kind. We're seeking access to the **underlying business records** that are directly relevant to our case and that would be otherwise discoverable in this MDL under standard principles of Rule 26 discovery." PEX 10 at 94:2-6 (statement of Plaintiffs' counsel). Despite this clear disclaimer, Lowey still boldly misrepresents to this Court that "all" investigatory materials have been turned over in discovery.

*Second*, Mr. Nielsen has expressly *withheld* and is required to withhold production of certain information that he obtained as a government enforcer. During the Rule 30(b)(6) deposition of Connecticut, for example, the Connecticut Attorney General claimed privilege numerous times over documents and information relating to the Connecticut AG's monitoring of the generics industry. *See* Motion to Disqualify ("MTD") at 8-9. Similarly, certain settlement agreements require cooperation with Connecticut, while specifically *prohibiting* disclosure of the information provided in cooperation to anyone else. For example, the Apotex settlement requires Apotex to cooperate with the State Attorneys General and EPPs while ensuring that the cooperation will be treated as "highly confidential" and specifically prohibits disclosure of the information to "*any other party in the MDL*." ECF No. 3313-1 Section VII ¶ D at 17 (Apotex Corp. Settlement Agreement filed Mar. 31, 2025) (emphasis added). Finally, Lowey and Mr. Nielsen admit to withholding information from private plaintiffs in their Opposition. Mr. Nielsen concedes at times that he only shared "all the important and material information"— wherever he draws those lines. Nielsen Decl. ¶ 21. Mr. Nielsen further declares that he shared information to help "create the best evidentiary record possible," suggesting he omitted

*exculpatory* information that he now knows to avoid bringing out at trial or in depositions. *Id.* Lowey also admits that its lawyers attended only "some" (but not all) proffers. Opp. at 21.

*Third*, Lowey previously admitted that Mr. Nielsen had confidential information from settlement negotiations (MTD at 3, 8) and Mr. Nielsen concedes the same in his declaration (Nielsen Decl. ¶ 36). Specifically, Mr. Nielsen admits having information that he "learned during settlement discussions that [he] participated in when employed at the CT AGO" and promises that he did not disclose such to "any Lowey attorneys" and "do[es] not plan to do so in the future." Nielsen Decl. ¶ 36. Mr. Nielsen claiming in the same breath that private plaintiffs now have "all of the same information [he] had in [his] possession as a government attorney" is inaccurate at best. *Id.* ¶ 29. But more, by promising not to disclose the settlement information, Mr. Nielsen acknowledges that this information falls *within* Rule 1.11(c). Lowey promised the same before this Motion. MTD at 3, 8. Lowey claiming now that the information falls *outside* of Rule 1.11(c) is inconsistent and undermines the entire premise of their Opposition.

*Finally*, Lowey suggests it is *Defendants'* burden to identify "specifically" what confidential information Mr. Nielsen might possess. Opp. at 3-4, 12. But such a requirement would be contrary to Rule 1.11(c), which protects against the risk of potential use of confidential information obtained "*about* a person" against "that person." Rule 1.11(c). It is not limited to information obtained *from* that person directly. It is broader than information that Defendants provided about themselves, and Defendants have no way of knowing everything that Mr. Nielsen obtained "about" them during the 10-plus-year investigation. Surely, much of the information "about" a Defendant that Mr. Nielsen obtained came from sources *other than* that Defendant (*e.g.*, attorney proffers from other Defendants, interviews of witnesses outside of the Defendant's control, or communications with other government agencies or third parties).

-5-

If Defendants were required to identify the confidential information that *they* provided, it would defeat the purpose of Rule 1.11(c). Rule 1.11(c) is intended to *protect* the confidentiality of the information that Defendants (and others) provided and the process by which they provided it, not *disclose* that to plaintiffs, other defendants, or the public in a filing. Defendants are not required to give private plaintiffs a roadmap of how they could be materially disadvantaged when seeking to enforce a rule that prevents exactly that. Still, if the Court wants specific examples of CGI provided to Mr. Nielsen while he was at the Connecticut Attorney General, certain Defendants are prepared to do so *ex parte* and *in camera* (such that the confidentiality of the information and government process is maintained).

In sum, it is undeniable that Mr. Nielsen obtained much more information "about" Defendants than what was ordered to be produced in this MDL in his 10-plus years of investigating the generics industry, including *inter alia* in proffer meetings, settlement discussions, witness interviews, oral or written presentations and communications, and mental impressions and work product. Much of that information was specifically excluded from production or never even sought by private plaintiffs. This information is of material importance and could be used to the material disadvantage of Defendants in numerous ways, including in settlement negotiations, examining witnesses at deposition and trial, and deciding which materials to subpoena from DOJ and other sources. MTD at 1, 7, 9, 21, 23.

### 2. Mr. Nielsen Possesses Information that Meets the Definition of "Confidential Government Information" under Rule 1.11(c)

Presumably aware that Mr. Nielsen possesses more information than that given to private plaintiffs, Lowey argues that nonetheless Mr. Nielsen did not violate Rule 1.11(c) because the information Mr. Nielsen possesses falls outside the definition of "CGI." *See* Opp. at 14-25. Lowey contends that the information falls outside the definition either because (i) it was not compelled,

(ii) it was already shared, or (iii) it could be shared.  These arguments are belied by the Rule's text, the case law interpreting it, the statute that defines what is "confidential," and common sense.

*First*, Lowey argues that only information obtained by *compulsory* process qualifies as "CGI," seeking to exclude settlement communications, attorney proffers, voluntary witness interviews, and mental impressions from the same.  Opp. at 2, 20-21.  But Rule 1.11(c) does not use the word "compel" or "compulsion"—that is Lowey's and Mr. Nielsen's "gloss on the definition."  Wendel Reply ¶ 4.  While information obtained by compulsory process certainly qualifies as "CGI," Rule 1.11(c)'s text extends beyond compelled information to that "obtained under governmental authority."  PRPC 1.11(c).  To confirm, Rule 1.11(c) defines "CGI" as:

> information that has been [i] obtained under governmental authority and [ii.a] which, at the time this Rule is applied, the government is prohibited by law from disclosing to the public or has a legal privilege not to disclose and [ii.b] which is not otherwise available to the public.  PRPC 1.11(c) (additions to note the subparts).

Recognizing the government's authority is broad, courts often find "CGI" includes more than compelled information, i.e., information disclosed voluntarily.  For example, in *In re National Prescription Opiate Litigation*, the court found that information disclosed *voluntarily* "in a spirit of confidence and trust" to a government task force was "CGI," under an analogous rule.  2019 WL 1274555, at *4-5 (N.D. Ohio Mar. 20, 2019).  Professor Wendel explains the reason for the broad interpretation of "government authority":

> The target of the investigation, when communicating or negotiating with the government, and sharing information with the government when it is acting in this capacity is sharing that information under government authority. Sharing information, entering into negotiations, or making a proffer is obtained under government authority, as such information is provided to government officials precisely because of the authority they wield; for this reason, any information shared with the government under those circumstances is GGI.

Wendel Reply ¶ 4 (providing an analogy to Rule 1.6).  Indeed, the Connecticut AG here threatened individuals with industry bans.  MTD at 9.  And, this Court recognized that information provided

-7-

to the States could lead to potential criminal sanctions pursued by "jurisdictions other than the federal government" (Order at 3-4 (16-MDL-2724 ECF No. 3463) despite Mr. Nielsen's contention otherwise (Nielsen Decl. ¶ 6).

Further, Lowey's narrowly concocted definition is contradicted by Connecticut law that states clearly that information produced *voluntarily* in an Attorney General antitrust investigation is *confidential*. Connecticut General Statute 35-42(c)(2) provides that "[a]ll documentary material or other information *furnished voluntarily to the Attorney General* … for suspected violations of the provisions of [the Act] … shall not be available to the public." (emphasis added); *see also* 35-42(c)(1) (prohibiting document material furnished to the AG to be available to the public). As interpreted, this statute "bar[s] disclosure of *material and information* gathered in an antitrust investigation pursuant to § 35-42 to all persons outside of the attorney general's office, with the exception of officials of other states and the federal government." *Brown & Brown, Inc. v. Blumenthal*, 1 A.3d 21, 35-36 (Conn. 2010) (emphasis added). While the Court's pre-trial orders override this statutory bar with respect to *subpoenaed documents*, they certainly do not extend to *other information* voluntarily furnished to the Connecticut AG during its investigation. To the extent Mr. Nielsen has shared such information with private plaintiffs, he violated Section 35-42, and the risk of harm that Rule 1.11(c) was intended to prevent occurred much earlier than previously known.[4]

*Second*, Lowey argues that "CGI" does not include any information that Mr. Nielsen shared with private plaintiffs pursuant to pre-trial orders and common interest agreements. Opp. at 14-

---

[4] Lowey's cases are not to the contrary. In *People v. OptumRx Inc.*, an unpublished decision that "must not be cited or relied on" (Cal. Ct. R. 8.1115(a)), the dispute related solely to documents produced in response to a subpoena, not other forms of information. 2025 WL 2542288, at *1 (Cal. Ct. App. Sept. 4, 2025). *In re Nat'l Prescription Opiate Litig.*, also involved only documents produced in response to a subpoena. 2024 WL 3387288, at *2-3 (N.D. Ohio Mar. 18, 2024).

15, 21-22.    According to Lowey, sharing the information with *private plaintiffs* strips its "confidential" status under Rule 1.11(c).  But again, nothing in the Rule's text or case law supports this idea.  Indeed, the Rule's text clearly states that information obtained by the government meets the confidentiality definition so long as the government is "prohibited by law from disclosing *to the public . . .* and [the information] is not otherwise available *to the public*."  PRPC 1.11(c) (emphasis added).    Regardless of whether Mr. Nielsen shared the information with *private plaintiffs* (under common interest or court order), Mr. Nielsen was still prohibited by law from disclosing the information "to the public" and it is still not otherwise available "to the public."  This comports with Connecticut General Statute 35-42(c), which states—"[a]ll documentary material or other information … *shall not be available to the public*." (emphasis added).

In support of its position, Lowey points to the prefatory text of Rule 1.11(c)—"[e]xcept as law may otherwise permit"—not to the text of the definition of "confidential government information."  Opp. at 14-15.  Lowey then points (extensively) to footnote 30 of ABA Formal Opinion 509, which provides that "[w]hen the law permits the client to use the confidential government information that the lawyer acquired while in government service, the reason for the disqualification provision – i.e., to prevent the improper use of confidential government information – is inapplicable."  Opp. at 14; ABA Formal Op. 509 at 9 n.30.  But Lowey fails to explain how the "law permits" the private plaintiffs here (Humana and Molina) to use any information that Mr. Nielsen might have provided to them under common interest (other than pre-existing documents ordered to be produced).  Indeed, the law does *not* permit them to do so, as Connecticut General Statute 35-42(c)(2) prohibited the disclosure of any other information obtained by Mr. Nielsen.[5]  A common interest agreement does nothing to cure that violation, nor

---

[5] Mr. Nielsen has even acknowledged that information obtained during the investigation can only be shared pursuant to court order.  Transcript of Oral Arguments on Discovery Motions 133:20; (continued...)

can it permit Humana and Molina to use information shared. Indeed, typical common interest agreements only *prohibit* information from being shared to *preserve* confidentiality, *not permit* the use of that information.

More fundamentally, Lowey takes this footnote entirely out of context. The footnote discusses scenarios in which the client is a *public entity*—not a private client—and that public entity client is *already* legally permitted to use the CGI. *Id.*; Wendel Reply ¶ 9. The footnote does nothing to bless Mr. Nielsen's actions here. Nor does the case law. In both of Lowey's lead cases—*In re Nat'l Prescription Opiate Litig.* and *OptumRx*— the courts reached their conclusions based on whether the information was readily discoverable, not whether it had already been shared. *See In re Nat'l Prescription Opiate Litig.*, 2024 WL 3387288, at *11; *OptumRx*, 2025 WL 2542288, at *6. Neither court held that prior sharing of materials stripped their status as CGI, as Lowey wants this Court to believe.

*Third*, Lowey argues that *none* of the information in Mr. Nielsen's possession is CGI because it could *all* "be obtained through routine discovery." Opp. at 15-19. Again, that is false. For starters, Connecticut General Statute 35-42 prohibits the disclosure of all forms of information obtained during an investigation, rendering it unobtainable through routine discovery. *See Brown & Brown*, 1 A.3d at 35. Also, much of the information underlying this Motion is protected by legal privilege, including investigative privilege and work product. *See In re Nat'l Prescription Opiate Litig.*, 2024 WL 3387288, at *10 ("Further, governments maintain information that is subject to a recognized legal privilege, such as the attorney-client privilege or the work product doctrine, that is not routinely discoverable."). As discussed, the Connecticut AG has invoked these

---

25 (July 11, 2018) (PEX 10) ("it's the Connecticut Attorney General's Office's position that there is nothing in *Brown and Brown* or in the Connecticut Anti-Trust Act which would prohibit the production of investigatory materials in a subsequent litigation **if** it was done pursuant to a court order after the responding parties had the opportunity to object . . . .") (emphasis added).

privileges to prevent discovery of such information. *Supra* at 4. The Connecticut AG also prohibits certain information from disclosure pertaining to settlement discussions. *Supra* at 4. The information underlying this Motion cannot be obtained through routine discovery.

### 3.     Nielsen's "Confidential Government Information" Could be Used to the Material Disadvantage of Defendants

Lowey next argues that if the Court does not accept its narrow definition of "CGI," the Court should hold that the CGI here could not be used to Defendants' material disadvantage because it was already in private plaintiffs' possession. Opp. at 14-19, 21-25. Again, Lowey argues that Mr. Nielsen's sharing of the information with private plaintiffs saves him from violating Rule 1.11(c). It does not. Rule 1.11(c) does <u>not</u> prohibit *possession* of CGI. It prohibits former government attorneys who possess the CGI from *representing* private clients when CGI *could* be used. Lowey wants this Court to hold that former government attorneys can represent any client in a related matter so long as the government attorney previously gave the client the same confidential information. No court has held this.

Even if Mr. Nielsen shared all information that he obtained as a government attorney with plaintiffs (he did not), Lowey's interpretation of Rule 1.11(c) would render it a nullity. Rule 1.11(c) prohibits an attorney *after* leaving government from *representing* private plaintiffs to avoid even the possibility that confidential information *could be used* to a person's disadvantage. Not only does Lowey's interpretation find no support in the rule or the case law, but it would also create perverse incentives if that attorney could immunize himself from the rule *before* leaving the government by giving the confidential information to potential future private clients. For the same reason the government agency cannot consent to (or waive) Rule 1.11(c), a government attorney cannot use a common interest agreement as an end-run around the rule's requirements. If the mere disclosure of CGI rendered it incapable of being used to "materially disadvantage" the person

about which the information pertained, then Rule 1.11(c) would serve no purpose: a government employee could avoid a rule violation every time by simply sharing the information with their new private client—the very thing that Rule 1.11(c) is meant to prevent. Wendel Reply ¶ 14.

For all these reasons, Mr. Nielsen has violated Rule 1.11(c). Lowey's argument that Rule 1.11(c) was not violated because all information Mr. Nielsen obtained was given to private plaintiffs misstates the facts and misunderstands the law. Notably, the Opposition is devoid of specifics on what information was given to private plaintiffs (and, if anything, inconsistent on that front), devoid of authority that permitted Mr. Nielsen to give the information (including whether other States, other Defendants, or other parties consented to the disclosure of *their* confidential information), and devoid of any showing that the information could be disclosed "to the public" or "otherwise available to the public."

### B.    Lowey's Opposition Cannot Save Mr. Nielsen's Violation of Rule 1.11(a)

Rule 1.11(a)(2) prohibits a former government employee from representing a private client in substantially related matters "unless the appropriate government agency gives its informed consent to the representation." PRPC 1.11(a)(2). This makes Rule 1.11(a)'s requirements different than Rule 1.11(c) – which does not permit the government to consent to the use of another party's CGI. As explained in the Motion (and not contested in Opposition), "informed consent" "denotes the consent by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct." PRPC 1.0(e).[6]

Lowey now asserts—for the first time and in wholly conclusory fashion—that "Mr. Nielsen responsibly advised the Connecticut Attorney General of his proposed representation of Humana

---

[6] The Opposition also does not contest that Rule 1.11(a) is violated without "informed consent."

and Molina and secured the informed consent of Connecticut." Opp. at 13. But this "explanation" raises more questions than answers. For starters, it is devoid of specifics—there is no mention of when this alleged consent occurred, who specifically consented, or what specifically was done to secure it. *See id.*; Nielsen Decl. ¶ 31. Instead, Mr. Nielsen submits only an email dated September 9 and a letter dated September 24 (after Defendants filed this Motion, more than two months after Mr. Nielsen started representing Molina and Humana), despite claiming to have studied the Rules requirements before transitioning. Nielsen Decl. Exs. A, B. In the September 9 email, Connecticut's Deputy Associate Attorney General states cryptically, "Administration is comfortable with you making the following representation: The Office was informed where [Mr. Nielsen] would be working, the plaintiffs he would be representing and the Office, noting his ethical obligations and responsibility to adhere to them, did not object." Nielsen Decl. Ex. A. The September 24 letter is similarly framed as a statement of non-objection, stating again that "The Office, acknowledging your ethical obligations and the imperative to adhere to them, did not express an objection." Nielsen Decl. Ex. B.

These vague after-the-fact proffers of "no objection" do not constitute informed consent. There is no indication that Mr. Nielsen disclosed the risks associated with his representation of Humana and Molina (such as, for example, the extent of confidential materials he could access, but other parties could not) or alternative courses of conduct (such as restrictions on his scope of work). Further, the vague reminders by Connecticut that Mr. Nielsen has "ethical obligations and [a] responsibility to adhere to them" suggests this was more of a warning than a consent. Having been given numerous opportunities to demonstrate informed consent and having repeatedly failed to do so, the only reasonable conclusion is that Mr. Nielsen also violated Rule 1.11(a).

-13-

C.     The *Boy Scout* Factors Favor Disqualification of Mr. Nielsen and Lowey

Finally, Lowey argues that even if there was a violation, the Third Circuit's *Boy Scout* factors favor denial of the Motion. *See* Opp. at 26-30 (citing *In re Boy Scouts of Am.*, 35 F.4th 149 (3d Cir. 2022)). This would be a first. *Every* court that has found a Rule 1.11(c) violation has disqualified the attorney. This is because a Rule 1.11(c) violation poses too great a threat to the judicial process and too much potential prejudice to the party to which the confidential information pertains, leaving disqualification as the only appropriate remedy. That is the case here.

*Threat to Proceedings and Unfair Prejudice*. "The most significant policy weighing in favor of disqualification is the court's interest in 'protecting the integrity of the proceedings and maintaining public confidence in the judicial system.'" *Jordan v. Phila. Hous. Auth.*, 337 F. Supp. 2d 666, 678 (E.D. Pa. 2004) (citation omitted). Here, the threat to judicial process is undeniable: Mr. Nielsen, the former lead public enforcer, has taken all he gained in that position to private plaintiffs. The purpose of the Connecticut Attorney General's investigative authority is to protect its citizens. Using that government authority to now benefit some private plaintiffs erodes the public trust in the government and taints these judicial proceedings. It also prejudices Defendants and other plaintiffs that do not have access to the same unique information. Even worse, Mr. Nielsen has already given some confidential information to some of these plaintiffs, which only increases the threat to the proceedings and the risk of prejudice to Defendants. By contrast, there is nothing "unfair" about enforcing ethics rules.

*Right to Counsel*. Lowey's central complaint is that disqualification would deprive their clients' right to retain chosen counsel. While that right is certainly important, it is not sacrosanct, and parties' chosen counsel are routinely disqualified for rules violations. *See, e.g.*, *Henry v. Del. River Joint Toll Bridge Comm'n*, 2001 WL 1003224, at *7 (E.D. Pa. Aug. 24, 2001) ("[W]hile a

party's right to counsel of its choice is important … such considerations must yield to the ethical considerations that bear upon the integrity of the judicial process."). Alternatively, if Lowey had demonstrated that it established a proper and sufficient ethical wall prior to Mr. Nielsen's arrival, other attorneys in the firm could have continued to represent Humana and Molina. Mr. Nielsen's "extensive research" of the Rules should have led to that result. But Lowey failed to make this showing, nor can it make the showing given Mr. Nielsen is still actively working on the matter. Disqualification of Lowey and Mr. Nielsen is the only proper remedy here.

*Litigation Tactics.* Despite its bluster, Lowey has only itself and Mr. Nielsen to blame for the timing of Defendants' Motion. If Mr. Nielsen had researched the ethical obligations of a government attorney as he claims, he would have been aware that leaving the Connecticut AG to represent Humana and Molina in the same case would throw a monkey wrench into the proceedings. A quick read of Rule 1.11 would give any prudent government attorney reason to pause. Instead, Mr. Nielsen made the choice to immediately represent private plaintiffs without consulting the Court, the Pennsylvania Bar, or even an ethics advisor. Defendants immediately filed the Motion after Lowey confirmed Mr. Nielsen would not be screened.

*Undue Restriction on Practice.* Disqualification would not impose an undue restriction on Mr. Nielsen's ability to practice law. There are myriad opportunities that Mr. Nielsen could pursue in private practice or public service; he just happens to have chosen to pursue a representation that is prohibited by Rule 1.11. Defendants should not have to live with the adverse consequences.

## III.    CONCLUSION

For reasons articulated in Defendants' Motion and above, the Court should disqualify Mr. Nielsen and Lowey from representing Plaintiffs in these Actions.

Dated:   October 22, 2025

Respectfully submitted,

/s/ George G. Gordon
George G. Gordon
Julia Chapman
Forrest Lovett
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104-2808
Tel: (215) 994-2382
Fax: (215) 655-2240
george.gordon@dechert.com
julia.chapman@dechert.com
forrest.lovett@dechert.com

D. Brett Kohlhofer
Christie Boyden
DECHERT LLP
1900 K Street NW
Washington, D.C.
Tel: (202) 261-3300
Fax: (202) 261-3333
d.brett.kohlhofer@dechert.com
christie.boyden@dechert.com

*Attorneys for Defendant Lannett
Company, Inc.*

/s/ Jeffrey C. Bank
Jeffrey C. Bank
Seth C. Silber
WILSON SONSINI GOODRICH &
ROSATI
1700 K Street, NW, 5th Floor
Washington, D.C. 20006
Telephone: (202) 973-8800
Facsimile: (866) 974-7329
jbank@wsgr.com
ssilber@wsgr.com

Chul Pak
Michael Sommer
WILSON SONSINI GOODRICH &
ROSATI
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (866) 974-7329
cpak@wsgr.com
msommer@wsgr.com

Trina Higgins
WILSON SONSINI GOODRICH &
ROSATI
95 South State Street, Suite 1000
Salt Lake City, UT 84111
Telephone: (801) 907-6446
Facsimile: 866-974-7329
thiggins@wsgr.com

*Counsel for the Mylan Defendants UDL
Laboratories Inc.*

*/s/ Robin D. Adelstein*
Robin D. Adelstein
Mark A. Robertson
Kimberly Fetsick
Abigail Schwarz
Dewey Jude Gonsoulin, III
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY 10019-6022
Telephone: (212) 318-3000
Facsimile: (212) 408-5100
robin.adelstein@nortonrosefulbright.com
mark.robertson@nortonrosefulbright.com
kimberly.fetsick@nortonrosefulbright.com
abigail.schwarz@nortonrosefulbright.com
dewey.gonsoulin@nortonrosefulbright.com

Mark Angland
NORTON ROSE FULBRIGHT US LLP
779 9th Street NW, Suite 1000
Washington, DC 20001
Telephone: (202) 662-0200
Facsimile: (202) 662-4643
mark.angland@nortonrosefulbright.com

*Counsel for Defendants Bausch Health Americas, Inc.; Bausch Health US LLC; Oceanside Pharmaceuticals, Inc.*


*/s/ Donald W. Hawthorne*
Donald W. Hawthorne
CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
101 Park Avenue
New York, NY 10178
T: 212-696-6949
dhawthorne@curtis.com

*Counsel for Defendant Breckenridge Pharmaceutical, Inc.*

*/s/ David Fioccola*
Grant Esposito
David Fioccola
PROSKAUER ROSE LLP
Eleven Times Square New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
gesposito@proskauer.com
dfioccola@proskauer.com

Christopher Ondeck
PROSKAUER ROSE LLP
1001 Pennsylvania Ave., NW
Suite 600 South
Washington, DC 20004
Tel: (202) 416-5865
Fax: (202) 416-6899
ondeck@proskauer.com

*Counsel for Defendants Sandoz Inc. and Fougera Pharmaceuticals Inc.*


*/s/ Steven E. Bizar*
Steven E. Bizar
Agnese Whitt
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104
Tel: (215) 994-4000
steven.bizar@dechert.com
agnese.whitt@dechert.com

*Counsel for Citron Pharma, LLC*

-17-

/s/ *Brian T. Feeney*
Brian T. Feeney
GREENBERG TRAURIG, LLP
1717 Arch Street
Suite 400
Philadelphia, PA 19103
Tel.: (215) 988-7812
Fax: (215) 717-5265
brian.feeney@gtlaw.com

Roger B. Kaplan
Aaron Van Nostrand
GREENBERG TRAURIG, LLP
500 Campus Drive, Suite 400
Florham Park, NJ 07932
Tel.: 973.360.7900
Fax: 973.301.8410
kaplanr@gtlaw.com
vannostranda@gtlaw.com

*Counsel for Defendant Dr. Reddy's Laboratories, INC.*

/s/ *Carlos Ortiz*
Carlos Ortiz
Kayley B. Sullivan
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Email: kbsullivan@bakerlaw.com
Email: cortiz@bakerlaw.com

Mary Pat Brogan
BAKER & HOSTETLER LLP
127 Public Square #2000
Cleveland, OH 44114
Telephone: (216) 861-7020
Email: mbrogan@bakerlaw.com

*Counsel for Defendants Heritage Pharmaceuticals Inc., Emcure Pharmaceuticals, Ltd., and Satish Mehta*

/s/ *Sheron Korpus*
Sheron Korpus
Seth A. Moskowitz
Seth Davis
KASOWITZ LLP
633 Broadway
New York, New York 10019 Tel:
(212) 506-1700
Fax: (212) 506-1800
skorpus@kasowitz.com
smoskowitz@kasowitz.com
sdavis@kasowitz.com
*Counsel for Defendants Teva Pharmaceuticals USA, Inc., Barr Pharmaceuticals, Inc., Pliva, Inc., Actavis Elizabeth, LLC, Actavis Holdco U.S., Inc., and Actavis Pharma, Inc.*

/s/ *April N. Williams*
April N. Williams
Claire Bergeron
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, D.C. 20037
Tel: (202) 663-6000
Fax: (202) 663-6363
april.williams@wilmerhale.com
claire.bergeron@wilmerhale.com

Terry M. Henry
Melanie S. Carter
BLANK ROME LLP
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
Tel: (215) 569-5644
Fax: (215) 832-5644
THenry@blankrome.com
MCarter@blankrome.com

*Attorneys for Defendant Apotex Corp.*

-18-

/s/ John M. Taladay
John M. Taladay
Christopher P. Wilson
Edward W. Duffy
JoAnna B. Adkisson

Michael A. Munoz
BAKER BOTTS LLP
700 K Street NW
Washington, DC 20004
Telephone: (202) 639-7700
Facsimile: (202) 639-7890
john.taladay@bakerbotts.com
christopher.wilson@bakerbotts.com
ed.duffy@bakerbotts.com
joanna.adkisson@bakerbotts.com
michael.munoz@bakerbotts.com

Matthew M. Hilderbrand
BAKER BOTTS LLP
401 South 1st Street, Suite 1300
Austin, TX 78704
Telephone: (512) 322-2500
Facsimile: (512) 322-3613
matthew.hilderbrand@bakerbotts.com

Lauri A. Kavulich
CLARK HILL PLC
2001 Market Street, Suite 2620
Philadelphia, PA 19103
Telephone: (215) 640-8500
Facsimile: (215) 640-8501
lkavulich@clarkhill.com

Lindsay S. Fouse
CLARK HILL PLC
301 Grant St, 14th Floor
Pittsburgh, PA 15219
Telephone: (412) 394-7711
Facsimile: (412) 394-2555
lfouse@clarkhill.com

*Counsel for Defendants Sun Pharmaceutical Industries, Inc., Mutual Pharmaceutical Company, Inc., Taro Pharmaceuticals U.S.A., Inc. and Taro Pharmaceutical Industries, Ltd., URL Pharma, Inc.*

/s/ J. Clayton Everett, Jr.
J. Clayton Everett, Jr.
William S.D. Cravens
Molly R. Maidman
Y. Frank Ren
MORGAN, LEWIS & BOCKIUS
LLP 1111 Pennsylvania Avenue, NW
Washington, DC 20004 Telephone:
+1.202.739.3000 Facsimile:
+1.202.739.3001
clay.everett@morganlewis.com
william.cravens@morganlewis.com
molly.maidman@morganlewis.com
frank.ren@morganlewis.com

Harvey Bartle IV
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA 19103
Telephone: +1.215.963.5000
Facsimile: +1.215.963.5001
harvey.bartle@morganlewis.com

*Counsel for Defendants Perrigo New York, Inc., Perrigo Company plc*

/s/ Douglas M. Tween
Douglas M. Tween
LINKLATERS LLP
1290 Avenue of the Americas
New York, NY 10104
Tel: (212) 903-9072
douglas.tween@linklaters.com

*Counsel for Defendant Strides Pharma, Inc.*

 /s/ Benjamin H. Diessel
Benjamin H. Diessel
Ariela C. Anhalt
Emmett Gilles
WIGGIN AND DANA LLP
One Century Tower
265 Church Street
New Haven, CT 06510
Tel: (203) 498-4400
Fax: (203) 782-2889
bdiessel@wiggin.com
aanhalt@wiggin.com
egilles@wiggin.com

Nathan E. Denning
Gabriella E. Bensur
Chloe S. Booth
Michael W. Kucharski
WIGGIN AND DANA LLP
437 Madison Avenue, 35th Floor
New York, NY 10022
Tel: (212) 551-2600
Fax (212) 551-2888
ndenning@wiggin.com
gbensur@wiggin.com
cbooth@wiggin.com
mkucharski@wiggin.com

Christopher Bailes
WIGGIN AND DANA LLP
50 S. 16th Street, Suite 2925
Philadelphia, PA 19102
Tel: (215) 998-8318
Fax: (215) 988-8384
cbailes@wiggin.com

*Counsel for Defendant Aurobindo Pharma
USA, Inc.*

 /s/ Jason R. Parish
Jason R. Parish
BUCHANAN INGERSOLL & ROONEY PC
1700 K Street, NW, Suite 300 Washington,
D.C. 20006
Tel.: (202) 452-7900
Fax: (202) 452-7989
Email: jason.parish@bipc.com

Bradley J. Kitlowski
BUCHANAN INGERSOLL & ROONEY PC
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219
Tel.: (412) 562-8800
Fax: (412) 562-1041
Email: bradley.kitlowski@bipc.com

Caroline B. Warren
BUCHANAN INGERSOLL & ROONEY PC
Carillon Tower
227 West Trade Street, Suite 600
Charlotte, NC 28202
Tel.: (704) 444-3371
Fax: (704) 444-3490
Email: caroline.warren@bipc.com

*Counsel for Defendant Zydus
Pharmaceuticals (USA) Inc.*

*/s/ W. Gordon Dobie*
W. Gordon Dobie
Frank A. Battaglia
WINSTON & STRAWN LLP
35 W. Wacker Dr.
Chicago, IL 60601
Tel: (312) 558-5600
Fax: (312) 558-5700
wdobie@winston.com

Irving Wiesen
LAW OFFICES OF IRVING L. WIESEN, P.C.
420 Lexington Ave. – Suite 2400
New York, NY 10170
Tel: (212) 381-8774
Fax: (646) 536-3185
iwiesen@wiesenlaw.com

*Counsel for Defendant Ascend Laboratories, LLC*

*/s/ Ilana H. Eisenstein*
Ilana H. Eisenstein
Whitney Cloud
Ben C. Fabens-Lassen
DLA PIPER LLP (US)
1650 Market Street, Suite 5000
Philadelphia, PA 19103
Telephone: (215) 656-3300
ilana.eisenstein@dlapiper.com
whitney.cloud@dlapiper.com
ben.fabens-lassen@dlapiper.com

*Counsel for Defendants Pfizer Inc. and Greenstone LLC*

*/s/ Stephan Matanovic*
Stephan Matanovic (Pa. No. 83459)
Bailey Duquette P.C.
57 N. 2nd Street, 2nd Floor
Philadelphia, PA 19106
215.660.7600
stephan@baileyduquette.com

James Bailey
Bailey Duquette P.C.
104 Charlton St., 1W
New York, NY 10014
212.658.1946
james@baileyduquette.com

Darrell Prescott
Darrell Prescott Law Office P.C.
104 Charlton Street, 1-W
New York, NY
(917) 510-3165
dp@darrellprescott.com

*Counsel for Defendant G&W Laboratories, Inc.*

-21-

*/s/ Brian J. Smith*
Brian J. Smith
WILSON SONSINI GOODRICH &
ROSATI
Professional Corporation
1700 K Street, NW, 5th Floor
Washington, D.C. 20006
Telephone: (202) 973-8800
Facsimile: (866) 974-7329
brian.smith@wsgr.com
*Admitted only in Illinois & Maine

*Counsel for Defendant Mayne Pharma Inc.*

*/s/ Peter G. Siachos*
Peter G. Siachos
GORDON REES SCULLY MANSUKHANI LLP
677 King Street, Suite 450
Charleston, SC 29403
Telephone: (843) 278-5900
Facsimile: (843) 804-4691
psiachos@grsm.com

Clair E. Wischusen
GORDON REES SCULLY MANSUKHANI LLP
277 S. Washington Street, Suite 550
Alexandria, VA 22314
Telephone: (703) 650-7030
Facsimile: (202) 800-2999
cwischusen@grsm.com

*Counsel for Defendant Epic Pharma, LLC*

-23-

## CERTIFICATE OF SERVICE

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served on October 22, 2025, with a copy of this document via the Court's CM/ECF system.

/s/ Jeffrey C. Bank
Jeffrey C. Bank