# Exhibit 1

Case 2:20-cv-00695-CMR    Document 300-1    Filed 10/22/25    Page 1 of 11

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| | MDL 2724 |
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | 16-MD-2724 |
| | HON. CYNTHIA M. RUFE |
| This Document Relates to: | |
| *Molina Healthcare Inc. v. Actavis Elizabeth LLC, et al.* | |
| *Humana Inc. v. Actavis Elizabeth LLC, et al.* | 20-CV-00695 |
| *Humana Inc. v. Actavis Elizabeth LLC, et al.* | 18-CV-03299 |
| *Humana Inc. v. Actavis Elizabeth LLC, et al.* | 19-CV-04862 |
| | 20-CV-06303 |

**Reply Declaration of W. Bradley Wendel**

1. At the request of counsel for the moving defendants, I am submitting this Reply Declaration to address issues on which plaintiffs and their experts have misstated the applicable law on government lawyers who move to private practice.

*Definition of "confidential government information."*

2. The plaintiffs are urging the court to adopt a novel definition of "confidential government information" that completely guts the protection afforded by Pennsylvania Rule 1.11(c) to the sensitive confidential information about citizens that is in the hands of a government agency. They are seeking to categorically exclude information from the definition of confidential government information, including (i) information communicated in the course of settlement negotiations (including that a settlement negotiation occurred); and (ii) proffers and other information provided to the government on a voluntary basis. Not only does this definition run contrary to the plain language of Rule 1.11(c), but it would disincentivize persons from providing information to the government voluntarily, even though Connecticut law explicitly provides protection for such material. More importantly, plaintiffs' argument that if confidential government information is shared with private litigants, it is now outside the scope of protection is almost self-refuting, because it robs the relevant individuals or entities to whom the information pertains of any control over the misuse of that information. If, by disclosing confidential government information to private parties, a

1

government lawyer could render it not-protected, then Rule 1.11(c) loses any force. Nothing would remain within the scope of protection for information about its citizens that a government agency obtained if the mere sharing of that information with a private party aligned in interest with the government and *against* the interests of the citizens to which it pertains, could destroy its protection.

3.      The term "confidential government information" is not limited to information pertaining just to the government's own legal interests. The important thing about confidential government information ("CGI") is that it creates a vulnerability on the part of individuals or entities to whom the information relates. CGI is information about citizens in the possession of the government. A former government lawyer having access to CGI may therefore use it to advance the lawyer's personal interests or the interests of the lawyer's clients, to the detriment of the citizens to whom the CGI pertains. Defendants' disqualification motion seeks to enforce the protection that is built into Pennsylvania Rule 1.11(c), by prohibiting a former government lawyer from representing private parties in a situation in which there is a material risk of the misuse of CGI.

4.      The definition of CGI under Pennsylvania Rule 1.11(c) has two elements, with the second having two sub-elements, as shown here, with emphasis added:

> the term "confidential government information" means information that **[i]** has been obtained under governmental authority *and* which, at the time this Rule is applied, **[ii.a]** the government is prohibited by law from disclosing to the public *or* **[ii.b]** has a legal privilege not to disclose *and* which is not otherwise available to the public.

Importantly, the first element defines CGI as information obtained "under government *authority*." The plaintiffs engage in a definitional sleight of hand when they summarize this language as applying only to information whose disclosure is *compelled*. They argue:

> "Confidential government information" under Rule 1.11(c) is limited to information that only the government can compel or obtain, such as grand jury testimony. Information learned during settlement discussions is not "confidential government information" because it is not compelled. Mental roadmaps or strategic insights based on information available through civil discovery are also not considered confidential government information.

Plaintiffs' Mem. in Opp., p. 2. Rule 1.11(c) does not use the word "compel" or "compulsion" – that is Lowey's and Mr. Nielsen's gloss on the definition. So is the example of grand jury testimony. The language "obtained under governmental authority" is considerably broader than "compelled" and certainly includes more than just grand jury testimony. For example, if the government is investigating a company for possible antitrust violations, the target of the investigation will be dealing with the government that has the official capacity to impose legal sanctions if it determines there has been misconduct. The target of the investigation, when communicating or negotiating with the government, and sharing information with the government when it is acting in this capacity is sharing that information under government authority. Sharing information, entering into negotiations, or making a proffer is obtained under government authority, as such information is provided to government officials precisely because of the authority they wield; for this reason, any information shared with the government under those circumstances is CGI.[1] It follows that safeguarding CGI, by prohibiting its misuse by a former government lawyer, is an essential part of incentivizing parties to cooperate with government investigations.

5.      Much of the plaintiffs' argument pertains to agreements between the private plaintiffs and the government entities to share information and court orders allowing the sharing of some AG documents. Plaintiffs do not assert that confidential settlement communications were provided pursuant to such agreements or orders, but are relying only on the narrow, non-textual definition of CGI, often glossing over this distinction. For example, Professor Roiphe states that "*all the information* [Mr. Nielsen]

---

[1] An analogy from a closely related professional conduct rule may be helpful. Pennsylvania Rule 1.6(b)(4) permits a lawyer to disclose what would otherwise be protected as confidential information "to the extent that the lawyer reasonably believes necessary . . . to establish a defense to a criminal charge or civil claim or disciplinary proceeding against the lawyer based upon conduct in which the client was involved . . .." Comment [14] to the rule permits disclosure in self-defense before the commencement of a formal proceeding:

> If the lawyer is charged with wrongdoing in which the client's conduct is implicated, the rule of confidentiality should not prevent the lawyer from defending against the charge. The lawyer's right to respond arises when an assertion of such complicity has been made. Paragraph (c)(4) does not require the lawyer to await the commencement of an action or proceeding that charges such complicity, so that the defense may be established by responding directly to a third party who has made such an assertion.

Disclosure of the information would not be "compelled" in this situation but it would be a reasonable response to the allegations against the lawyer. Similarly, the disclosure of information to the government would be "under governmental authority" if a reasonable person would understand disclosure as a reasonable response to the assertion of official state power in a proceeding, investigation, or similar matter.

3

obtained while working at the Connecticut AG's office has already been shared with the plaintiffs in this case. Roiphe Report ¶ 21 (emphasis added). Her assertion, in other words, is that there is no information that Nielsen had access to which has not been provided to the private plaintiffs before or subsequent to Nielsen's move from the Connecticut AG's office to the Lowey firm. Similarly, plaintiffs make this argument in their Memorandum:

> Mr. Nielsen has no information that Lowey's MDL Clients do not already have and have not already had access to for years in the discovery record (and through CIAs).

Pl. Mem. in Opp., p. 3; see also Cohen Report ¶ 21 (discussing information-sharing by Nielsen with counsel for the private plaintiffs). This imprecision is not limited to settlement communications, but includes inconsistent statements regarding what other materials have been provided by the states to private plaintiffs. It is unclear what work product has been given, such as interview and attorney proffer notes, recording of mental impressions, and more. Specifically, in their Memorandum in Opposition to the Defendants' Motion for Disqualification, the plaintiffs make the following assertions:

- The states and private plaintiffs entered into common interest agreements to facilitate the sharing of information and to ensure that all the plaintiffs were on a level playing field (Pl. Mem. in Opp., pp. 1, 8-9); see also Cohen Report ¶¶ 15-16, 51. When CGI is available to private plaintiffs, it cannot be used to the material disadvantage of the individuals and entities to whom the information pertains (p. 2).

- Some government investigatory materials have been produced to the defendants in discovery; thus, this information cannot be considered confidential (Pl. Mem. in Opp., p. 2; see also Roiphe Report ¶ 14 ("All the states' materials, including the Connecticut AG's work, were treated as Protected Materials under the order and shared accordingly . . .. Specifically, the Connecticut AG's subpoenas and responses were deemed discovery material and distributed to the parties in the MDL"); Cohen Report ¶ 9 ("all documents produced in response to those subpoenas have been made available to all parties")). All of the information obtained pursuant to Civil Investigatory Demands (CIDs) was available to the defendants through discovery (p. 5).

- "Because this Court required all information acquired by the States to be produced to the private parties starting in 2018, and because the plaintiffs have been sharing confidential information, attorney work product, mental roadmaps

and strategic insights since then pursuant to their CIAs to collectively develop the current discovery record, Humana and Molina have gained no special knowledge by Mr. Nielsen joining Lowey" (p. 14).

Plaintiffs and their experts appear to be asserting that the defendants have nothing to worry about, because everything known by Mr. Nielsen that is within the scope of the definition of CGI has been shared pursuant to court orders or common interest agreements in this MDL.

6.      As I emphasized in my initial Report, and which is not challenged by Professor Roiphe or Mr. Cohen, conflicts rules operate prophylactically, by regulating the *risk* that a lawyer may misuse information. Note that Rule 1.11(c) does not directly prohibit disclosure or adverse use of CGI, nor does it prohibit the possession of CGI. Rather, it prohibits the moving lawyer from *representing* a private party where the lawyer possesses CGI that could be used to the material disadvantage of the person to whom it pertains:

> a lawyer having information that the lawyer knows is confidential government information about a person acquired when the lawyer was a public officer or employee *may not represent* a private client whose interests are adverse to that person in a matter in which the information could be used to the material disadvantage of that person.

(Emphasis added.) There is a very simple reason for this: The prophylactic function of conflicts rules means that a person does not have to accept on trust that the lawyer will not misuse the CGI about that person to that person's disadvantage.

7.      Another implication of the "risk rules" approach to conflicts of interest is that their application does not depend on a showing of actual impropriety by the lawyer or actual harm to the person whose interests are protected.[2] The risk is a sufficient basis to conclude that the rule was violated. Accordingly, I am not making any

---

[2] Mr. Cohen's Report concludes that there is no basis on this record for bringing disciplinary charges against Mr. Nielsen. Cohen Report, p. 15. Although Rule 1.11(c) provides the applicable standards of conduct in both situations, the remedies applicable in a disqualification proceeding are different from those in a professional disciplinary proceeding. Disqualification is a remedy pursuant to the court's inherent authority to supervise proceedings to protect against prejudice to any of the parties as a result of the breach by counsel for a party of a professional duty. Disqualification is not punitive but is intended to protect the integrity of the proceedings. I express no opinion on whether Mr. Nielsen would be subject to a professional disciplinary grievance; my opinion pertains solely to the context of disqualification.

assumptions about Mr. Nielsen's actual conduct or motivations, but the facts in this case create the risk that is addressed Rule 1.11(c).

8.      The defendants should not have to take on trust that Mr. Nielsen or his new private client will not, even inadvertently, use his access to CGI to further the private clients' interests in this litigation. The prohibition on him representing private plaintiffs where the CGI known to him may be used adversely to the parties to whom it pertains is intended to reassure individuals and entities that the government will not use information it obtains during a government investigation for any other purpose.

9.      In defining "confidential government information," the court must look first at the text of the rule, which defines the scope to include that information that the government is prohibited from producing "to the public" and is "otherwise not available to the public." Plaintiffs instead focus on another part of the rule and cite authority that arises in a different context. Plaintiffs rely to a considerable extent on footnote 30 from ABA Formal Op. 24-509 (Pl. Mem. in Opp., p. 14; see also Roiphe Report, p. 6; Cohen Report ¶ 52), providing that the prohibition should not apply when the new client is "legally permitted to use the information in question." To understand the footnote, it is necessary to read it in the context of the sentence in the main body of text to which it pertains. That sentence states:

> Additionally, the term "private client" also includes *public* entities and officials whom the lawyer represents in private practice, if those clients are not legally entitled to employ the confidential information.

What the footnote goes on to explain is that, if a *public* entity is the client and already legally permitted to use the information in question, the concern about misuse of the information is not as weighty. The case cited in the footnote, *GM v. City of New York*, is indeed well-known. The point of that case, however, is that a lawyer at a private law firm may be considered to be representing a "private client" for the purposes of Rule 1.11(c) even if the client is a public entity. The case and footnote 30 do not address the situation of a former government lawyer taking protected CGI with him out the door of a government agency and working at a private law firm, representing private parties, where there is no statutory or regulatory protection for the information. Nothing, that is, beyond Rule 1.11(c).

10.      Reading footnote 30 in context shows something fundamental about Rule 1.11(c) and CGI. From the point of view of the ethical duties of a lawyer, the representation of private parties is fundamentally different from the representation of a government entity client. The reason is that government entities are themselves legally

obligated to protect confidential information. Thus, the parties to whom CGI pertains have some assurance, in the form of the statutes or regulations protecting the information, that it will not be used against them by private entities. A private client is not bound in the same way. Therefore, it is the role of Rule 1.11(c) to provide this reassurance to persons and entities about whom the information obtained under government authority pertains.

11.    **T**he decision by Judge Polster in the opioid MDL, discussed on pp. 16-17 of the Plaintiffs' Memorandum, is similar to the *GM v. City of New York* case cited in footnote 30 of the ABA opinion. In the opioid MDL, Motley Rice was outside counsel for several government entities. The firm did not attempt to exploit the information it had gained in the course of a government investigation by subsequently bringing it to counsel representing a private party. The protections on information acquired by the government entities applied to the use of that information by Motley Rice in the MDL. There is also no indication in any of the relevant opinions that Motley Rice was in possession of any CGI beyond that which was produced in response to subpoenas or other process. In other words, there is no indication that Motley Rice interviewed witnesses, received attorney proffers, negotiated settlements, or liaised with other government agencies.

12.    Finally, these decisions are inapposite since Motley Rice was not acting as a government lawyer, but rather as a private law firm representing a government entity client. This distinction matters when a lawyer is dealing with adverse parties. Being confronted with the power of the state, in the form of the Attorney General's office, is an intimidating experience, in light of the powers and resources available to such offices. That is why the definition of CGI broadly includes information obtained "under governmental authority," whether voluntarily or not. Judge Polster found that Motley Rice was acting in a governmental role because of its "access to information pursuant to governmental authority," but Motley Rice's limited role of serving subpoenas and receiving documents is different than exercising the full powers of a government agency. This distinction makes sense in light of the policy underlying the rule. Rule 1.11(c) is intended to safeguard against the risk that current government lawyers will make themselves attractive lateral hires for a private law firm by offering to bring a valuable trove of information acquired by government authority, which can then be used on behalf of the clients of the private law firm. Again, and to emphasize, I am not impugning Mr. Nielsen's motives or integrity. I am not privy to the reasons behind his decision to leave government service and join the Lowey firm. The point, however, is that the party seeking disqualification need not prove anything about the motives of the moving lawyer. The risk of misuse of CGI is a sufficient ground for the disqualification of the former government lawyer.

7

13.     The reason this matters is that the premise of all conflicts rules is that "trust me" is not a sufficient answer to a party's objection that a lawyer having duties to protect that party's interests may be acting in ways that create a risk of harm to those interests. A moving lawyer case like this one is different from the representation by Motley Rice of the government parties in the opioid MDL (see Roiphe Report ¶¶ 37-38) because the entire scope of information Mr. Nielsen obtained in the course of his service as a government lawyer is unknown to defendants.[3] In the opioid MDL, all the parties knew what information Motley Rice was obtaining for its government-entity clients. It is different here, where the defendants do not know the full extent of the information Mr. Nielsen obtained or the full extent of the information he shared with the private plaintiffs in this MDL.

14.     In conclusion, the definition of "confidential government information" in Pennsylvania Rule 1.11(c) must be sensitive to the policy of protecting citizens against the use of information about them in furtherance of the interests of their new private clients. The sharing by Mr. Nielsen of this information with private parties does not transform it from confidential government information. Nor does it mitigate the risk that the information will be used to their disadvantage; if anything, it increases the risk. The defendants are still facing the risk of the misuse of information about them that the government obtained during the Connecticut AG's investigation. That is the reason for prohibiting Mr. Nielsen from representing clients in the private sector when this information can be used to the material disadvantage of the defendants.

*Informed consent to the subsequent representation of private parties.*

15.     Plaintiffs contend that Mr. Nielsen obtained the informed consent of the Connecticut Attorney General's Office, and therefore any conflict under Pennsylvania Rule 1.11(a)(2) is waived. *See* Pl. Mem. in Opp., pp. 3-4. As far as I can tell, plaintiffs do not contest that, in the absence of informed consent, there would be a conflict under Rule 1.11(a)(2) that would require Mr. Nielsen to withdraw from the representation, and which would be imputed to the Lowey firm in the absence of timely screening. Rule 1.11(a)(2) requires a lawyer to decline or withdraw from representation of a private client where the lawyer had participated personally and substantially as a public employee, unless the appropriate agency provides informed consent. Thus, if the

---

[3] Each defendant, of course, would have potential reasons to not want to disclose to other defendants the confidential information it provided to the government – or even the fact that it provided such information.

Connecticut AG's office did not provide informed consent, Mr. Nielsen's withdrawal from the representation is mandatory.

16.     Plaintiffs contend that the following language is evidence that the Connecticut AG's office provided informed consent:

> Administration is comfortable with you making the following representation: The Office was informed where Joe would be working, the plaintiffs he would be representing and the Office, noting his ethical obligations and responsibility to adhere to them, did not object.

*See* Email from Nicole Demers, Deputy Associate Attorney General, to Joseph Nielsen (Sept. 9, 2025). Notably, this email is dated after the date on which the defendants' motion to disqualify was filed.

17.     It is true that, unlike the ABA Model Rules (as well as the applicable rules of Connecticut, where Mr. Nielsen is admitted to practice), the Pennsylvania version of Rule 1.11(a)(2) does not require informed consent to be confirmed in writing. However, that does not alter the underlying obligation, which is to obtain informed consent, nor does it alter the definition of informed consent. A lawyer seeking to avoid disqualification has the burden of at least coming forward with *prima facie* evidence that the disclosures required to obtain informed consent were provided to the client. Thus, it critical to make a written record showing that sufficient information was provided and that informed consent was obtained *before* beginning a representation that requires informed consent.

18.     As defined in Pennsylvania Rule 1.0(e), informed consent requires the lawyer to communicate "adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct." The Connecticut AG's office recites that it was informed (i) where Mr. Nielsen would be working, and (ii) who he would be representing. There is nothing in that recitation of the disclosure that indicates Mr. Nielsen explained the material risks and reasonably available alternatives to Mr. Nielsen joining the Lowey firm and representing the private plaintiffs. This is not hyper-technical rule parsing. Informed consent is defined as it is to ensure that the lawyer with the conflict provides full, candid disclosure and does not obfuscate it in any way.

19.     The Deputy Associate AG's statement that the office "did not object" does not provide any evidence one way or the other regarding the adequacy of the disclosure that is the necessary predicate for informed consent. Again, the point is not that the

9

consent was or was not "confirmed in writing." In the Model Rules, that term includes a writing subsequently transmitted that confirms prior oral consent. Model Rule 1.0(b). The adequacy of the writing is not the issue; it is the adequacy of the disclosure, and once again, the plaintiffs' stance toward Defendants is "trust us" – i.e. trust that Mr. Nielsen has provided all the necessary information to the Connecticut AG's office about the risks of, and alternatives to, Mr. Nielsen's representation of the private parties. That is not how the conflicts rules work, and the court is entitled to know what information was provided to the government agency as a predicate for what the plaintiffs contend was informed consent.

Dated October 21, 2025
Ithaca, Tompkins County, New York

W. Bradley Wendel

10