**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL 2724<br>16-MD-2724<br><br><br>HON. CYNTHIA M. RUFE |
| This Document Relates to:<br><br>*Molina Healthcare Inc. v. Actavis Elizabeth LLC, et al.*<br>*Humana Inc. v. Actavis Elizabeth LLC, et al.*<br>*Humana Inc. v. Actavis Elizabeth LLC, et al.*<br>*Humana Inc. v. Actavis Elizabeth LLC, et al.* | 20-CV-00695<br>18-CV-03299<br>19-CV-04862<br>20-CV-06303 |

### DEFENDANTS' OBJECTIONS TO SPECIAL MASTER STENGEL'S REPORT AND RECOMMENDATION RESOLVING DEFENDANTS' MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL AND LAW FIRM

-i-

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND .................................................................................................. 4

III.    ARGUMENT........................................................................................................ 5

      A.      The Report Erred in Finding No Rule 1.11(c) Violation ....................................... 7

      B.      The Report Erred in Applying the *Boy Scouts* Factors ......................................... 13

IV.     CONCLUSION.................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Brown & Brown, Inc. v. Blumenthal*,
　1 A.3d 21 (Conn. 2010) ....................................................................................................11

*Henry v. Delaware River Joint Toll Bridge Comm'n*,
　2001 WL 1003224 (E.D. Pa. Aug. 24, 2001) ........................................................5, 6, 13

*In re Nat'l Prescription Opiate Litig.*,
　2019 WL 1274555 (N.D. Ohio Mar. 20, 2019) ..........................................................6, 13

*In re Nat'l Prescription Opiate Litig.*,
　2024 WL 3387288 (N.D. Ohio, Mar. 18, 2024) .............................................................12

*Inorganic Coatings, Inc. v. Falberg*,
　926 F. Supp. 517 (E.D. Pa. 1995) .....................................................................................5

*Jordan v. Phila. Hous. Auth.*,
　337 F. Supp. 2d 666 (E.D. Pa. 2004) ..............................................................................14

*Kronberg v. LaRouche*,
　2010 WL 1443934 (E.D. Va. Apr. 9, 2010) ...............................................................6, 13

*United States v. Miller*,
　624 F.2d 1198 (3d Cir. 1980)...........................................................................................5, 6

*United States v. Villaspring Health Care Ctr., Inc.*,
　2011 WL 5330790 (E.D. Ky. Nov. 7, 2011)................................................................6, 13

## STATUTES

Conn. Gen Stat. § 35-42.............................................................................................................1, 11

Conn. Gen Stat. § 35-42(c)(1)......................................................................................................11

Conn. Gen Stat. § 35-42(c)(2)......................................................................................................11

## RULES

Fed. R. Civ. P. Rule 72(a).............................................................................................................1

Pa.R.P.C. 1.11 ..........................................................................................................................6, 11

Pa.R.P.C. 1.11(a)...........................................................................................................................3

Pa.R.P.C. 1.11(c)................................................................................................................ *passim*

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, the undersigned Defendants respectfully object to Special Master Stengel's Report and Recommendation to the Court Resolving Defendants' Motion to Disqualify Plaintiffs' Counsel and Law Firm (the "Report") (ECF No. 3932). Defendants request that the Court set aside the Report and enter an order disqualifying Mr. W. Joseph Nielsen and his law firm Lowey Dannenberg, P.C. ("Lowey") from participating in the above-captioned actions (the "Actions") on behalf of Plaintiffs Molina Healthcare, Inc. ("Molina") and Humana Inc. ("Humana").

## I.    INTRODUCTION

Using his authority as a senior government attorney, Mr. Nielsen led a sprawling investigation – singlehandedly at times – into dozens of generic pharmaceutical manufacturers and executives, compelling the production of millions of pages of documents, interviewing myriad witnesses, cooperating with federal and state enforcers, and ultimately filing three complaints based on the conduct he purportedly uncovered. Sitting for an interview on CBS's 60 Minutes, Mr. Nielsen described how he used the authority of his office, including the powers granted to him under Connecticut General Statute § 35-42 to obtain evidence and information he then leveraged to obtain multiple confidential proffers from attorneys representing companies and individuals. He was the "leading force" for the State of Connecticut, and then for over 50 other states and territories as well, as he met with witnesses, negotiated settlements with parties, and developed and implemented the litigation strategy for the State AGs.

For about a decade, Mr. Nielsen was the face of the government of the State of Connecticut and the appointed liaison counsel for every state and territory government in the *Generics* actions. Seeking an opportunity to accelerate his cases, Mr. Nielsen moved to remand the State AG cases to Connecticut. But then, with the State cases mired in rounds of summary judgment briefing and

-1-

no trial set, he shifted back to the MDL, where Humana had been named a bellwether plaintiff with a trial date. He brought with him to private practice a trove of knowledge and information gained by wielding government authority, and he concedes that some of that material is confidential and could harm defendants if he shared it with his new partners and new clients.

The ethical rules do not permit this. Rule 1.11(c) of the Pennsylvania Rules of Professional Conduct ("PRPC") – adopted from the Model Rules of Professional Conduct – prohibits a former government enforcer from *potentially* using confidential government information ("CGI") in representation of a private party to the material disadvantage of others. The rule is specific to government enforcers and deliberately prophylactic to avoid any "unfair advantage [that] *could* accrue to the private client." PRPC 1.11 cmt. 4 (emphasis added). Based on decades of experience and review of the circumstances here, Defendants' expert, Dr. Brad Wendel, concluded that this was the "clearest… violation" of this rule that he has "ever encountered." ECF No. 3656-5, Wendel Report ¶ 1. Moreover, the fact that the State of Connecticut and Mr. Nielsen's new clients are on the same side of the "v" does not save him; in fact, it is exactly the scenario the rule is designed to govern. If Mr. Nielsen's occupational shuffle does not violate Rule 1.11(c), then the rule would effectively have no meaning, and it is hard to see how there could ever be a violation.

Against this backdrop, Special Master Stengel's conclusion that no violation of the ethical rules occurred is contrary to fact and law. Mr. Nielsen's concession that he uniquely possesses confidential information gained while negotiating settlements on behalf of the government—and that such information has not been shared with other plaintiffs—puts to bed any question as to whether his engagement here violates Rule 1.11(c). ECF No. 3717, Nielsen Decl. ¶ 36. The other categories of CGI he possesses simply make the violation that much more egregious. As the Report acknowledges, Mr. Nielsen was exposed to a "deep wealth of information regarding the generics

antitrust investigation/litigation," ECF No. 3932, Report at 15, and Lowey has publicly stated that they intend to use that information to benefit Humana and Molina. *See* Lowey Dannenberg, Profile of Joseph Nielsen at https://lowey.com/project/joseph-nielsen/ ("Joe's efforts on the Generics case will continue even as he has returned to private practice. … Joe's deep knowledge of evidence and extensive litigation expertise will well serve his new private clients as their cases head to trial."). Nothing more is needed to establish a violation of Rule 1.11(c).[1]

Despite this, the Report nonetheless concluded that all confidential information in Mr. Nielsen's possession has already been shared with other plaintiffs (contrary to Mr. Nielsen's own admissions and the language of this Court's orders limiting what information Connecticut could share with the MDL parties).[2] This is a fundamental mistake: it accepts Mr. Nielsen and Lowey's proffered "just trust us" approach to conflicts. The Report "trusts" Mr. Nielsen and Lowey's representation that *all* CGI is already rightfully in Plaintiffs' possession and "trusts" that Mr. Nielsen will not use any CGI to Defendants' detriment. As explained below, this is not correct. Rule 1.11(c) is specifically designed to *avoid* needing to "trust" that a conflict will not prejudice a party or proceeding. That is, the ethical rules are designed to safeguard against the *risk* of disadvantage to an opposing party. The Rule does not allow the risk to continue unabated based on self-serving representations, and the Report's conclusions were thus in error.

---

[1] Defendants also moved to disqualify Mr. Nielsen based on his failure to obtain informed consent from the Connecticut Attorney General office, as required by Rule 1.11(a). Although Defendants disagree with the Report's conclusion denying relief, Defendants do not object here.

[2] The Report faults Defendants for failing to proffer specific information that Mr. Nielsen possesses. But Defendants cited specific categories of such information, which is sufficient to find a violation. And when Defendants offered to provide more specific examples, the Special Master was only willing to accept the evidence if Defendants would also provide that information to Plaintiffs (and potentially other Defendants and the public). This would have eviscerated the purpose of keeping that information confidential, and thus Defendants could not do so.

Furthermore, the Special Master's subsequent analysis of whether disqualification would be an appropriate remedy was flawed, including because it was colored by these factual and legal errors. The Report's analysis gives short shrift to the prejudice to Defendants and the threat to the integrity of the judicial proceedings, which greatly outweigh any hypothetical delay in the proceedings or inconvenience to Molina and Humana. Moreover, in evaluating the *Boy Scouts* factors, the Special Master failed to *separately* consider disqualification of Mr. Nielsen and disqualification of Lowey; while both are warranted, the analysis materially differs for each.

Defendants should not be forced to bear the brunt of Mr. Nielsen's violations, and, to protect the integrity of these judicial proceedings, disqualification is the only appropriate remedy.

## II.    BACKGROUND

A comprehensive discussion of the relevant facts is contained in Defendants' Motion to Disqualify. ECF No. 3656, Mot. at 5-11. A summary of the most salient facts is in order here.

For more than a decade, Mr. Nielsen served as the lead government attorney in Connecticut's investigation into and litigation concerning alleged antitrust violations related to generic pharmaceuticals. Wielding his government authority and related statutory powers, he issued hundreds of civil investigative demands (CIDs), collected millions of documents, received multiple confidential proffers from Defendants and individuals, and led confidential settlement discussions on behalf of the states. Mr. Nielsen also led efforts to interview witnesses on behalf of the States and has refused to produce transcripts or notes from these interviews, claiming privilege. After Mr. Nielsen filed the first complaint on behalf of Connecticut and other states in 2016, he was appointed lead and liaison counsel on behalf of 54 states and territories and ultimately filed two additional complaints on behalf of those governments. Simultaneously, Mr. Nielsen was also purportedly providing "leads" to the DOJ, which was conducting its own investigations.

In doing so, Mr. Nielsen obtained substantial amounts of substantive confidential information that is unavailable to the public and to other Defendants, giving him unique insights into how Defendants assess the merits, value the claims, approach settlement negotiations, and are to satisfy any judgment or settlement demand. Moreover, by Mr. Nielsen's own admissions, at least some of this information is not available to and has not been shared with other plaintiffs. Mr. Nielsen cannot unlearn any of the unique confidential information he gained, and he and Lowey have confirmed that there is no wall between him and his new partners (except, according to them, relating to the information he learned during settlement negotiations).

On July 1, 2025, Mr. Nielsen withdrew as counsel for Connecticut and a week later, on July 8, 2025, entered appearances for Molina and Humana in his new role as partner at Lowey. Defendants immediately raised ethics concerns during a July 10, 2025 liaison status conference. Defendants met and conferred with Lowey, who confirmed that Mr. Nielsen was not restricted in any way from working on the Molina and Humana matters, despite possessing unique confidential information. When it became apparent that Lowey and Mr. Nielsen had no intention of restricting Mr. Nielsen's participation in these matters, Defendants promptly filed their Motion to Disqualify.

## III. ARGUMENT

"Courts have vital interests in protecting the integrity of their judgments, maintaining public confidence in the integrity of the bar, eliminating conflicts of interest, and protecting confidential communications between attorneys and their clients." *Inorganic Coatings, Inc. v. Falberg*, 926 F. Supp. 517, 519 (E.D. Pa. 1995) (citation omitted). To that end, a court may order disqualification where "disqualification is an appropriate means of enforcing the applicable disciplinary rule, given the ends that the disciplinary rule is designed to serve." *Henry v. Delaware River Joint Toll Bridge Comm'n*, 2001 WL 1003224, at *1 (E.D. Pa. Aug. 24, 2001) (citing *United*

*States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980)). The remedy exists to "safeguard the integrity of the profession and preserve public confidence in our system of justice." Report at 4 .

As explained herein and in Defendants' briefing, disqualification is the only "appropriate means of enforcing [Rule 1.11], given the ends that [Rule 1.11] is designed to serve." *Henry*, 2001 WL 1003224, at *1. Rule 1.11(c) is designed to protect the citizens who provide information to the government and to protect against the *risk* that the information will be used by a government lawyer for the benefit of a private client. No. 20-CV-00695, ECF No. 300-1, Wendel Reply ¶¶ 2, 3, 10. It does not exist only to cure actual use, but to prevent it in the first place. *See* Wendel Report ¶ 19; ABA Formal Op. 24-509 (2024), at 4-5 ("The Rule does not require that the confidential government information has been or will be used by the lawyer, only that it *could* be used to the material disadvantage of a person."). The conflict exists, and the Rule is violated, as soon as there exists a *risk* of adverse use. Wendel Report ¶ 19. The Rule also exists to preserve public confidence in the judicial system, which is threatened here by the government's former lead enforcer having information that could tip the scale in favor of two private plaintiffs.

As other courts have held, disqualification is the appropriate and only remedy available to meet these ends. *See, e.g.*, *Kronberg v. LaRouche*, 2010 WL 1443934, at *3-5 (E.D. Va. Apr. 9, 2010) (disqualifying former federal prosecutor who had obtained CGI about the defendant in prior criminal prosecutions); *United States v. Villaspring Health Care Ctr., Inc.*, 2011 WL 5330790, at *4-6 (E.D. Ky. Nov. 7, 2011) (disqualifying former state assistant attorney general who had previously represented state in investigation that led to False Claims Act litigation against defendant); *In re Nat'l Prescription Opiate Litig.*, 2019 WL 1274555, at *4-5 (N.D. Ohio Mar. 20, 2019) (disqualifying former federal prosecutor who had received CGI about parties from prior government work on an opioid task force). The same result should follow here.

### A.    The Report Erred in Finding No Rule 1.11(c) Violation

Rule 1.11(c) provides:

> Except as law may otherwise expressly permit, a lawyer having information that the lawyer knows is confidential government information about a person acquired when the lawyer was a public officer or employee may not represent a private client whose interests are adverse to that person in a matter in which the information *could* be used to the material disadvantage of that person.

PRPC 1.11(c) (emphasis added). As the Report observes, Rule 1.11(c) "restricts former government attorneys from working on matters in which the attorney possesses confidential government information." Report at 5. "Confidential government information" or CGI is defined as "information that has been obtained under governmental authority and which, at the time this Rule is applied, the government is prohibited by law from disclosing to the public or has a legal privilege not to disclose and which is not otherwise available to the public." PRPC 1.11(c). The Report correctly finds that Mr. Nielsen certainly obtained a "wealth" of CGI, but it erred by concluding that "Mr. Nielsen no longer has confidential government information that other plaintiffs in the MDL do not also have." Report at 17. That is simply not true (and even if certain other plaintiffs have a subset of that information, it does not cure the rule violation)

*First*, as the Report tacitly acknowledges, Mr. Nielsen has confidential settlement information that—*by Mr. Nielsen's own admission*—has not been shared with other plaintiffs. *Id.* at 16 n.10. Specifically, Mr. Nielsen admits having information that he "learned during settlement discussions that [he] participated in when employed at the CT AGO" and promises that he did not disclose such to "any Lowey attorneys" and "do[es] not plan to do so in the future." Nielsen Decl. ¶ 36. In doing so, Mr. Nielsen concedes that he has confidential information that, if shared, could harm the entities (or other defendants) that had provided the information to him when he was a

government enforcer. Under Rule 1.11(c), the inquiry stops there: Mr. Nielsen is in violation of the rule by his own admission.

However, in a footnote, the Report brushes away the violation by relying on Mr. Nielsen's promise that he will not use such information to the detriment of Defendants. Report at 16 n.10.[3] But Rule 1.11(c) does not ask whether CGI *will* be used, it asks whether it *could* be used. *See* Wendel Report ¶ 19; ABA Formal Op. 24-509 (2024), at 4-5. It is a prophylactic rule designed to head off any "unfair advantage [that] *could* accrue to the private client by reason of access to confidential government information." PRPC 1.11 cmt. 4 (emphasis added). The reason for this distinction is obvious: even if Mr. Nielsen does not expressly intend to use this CGI, he cannot unlearn the information he already knows.

For defendants who provided confidential settlement information to Mr. Nielsen when he was a state enforcer (as well as other defendants referenced in that information), the potential prejudice is clear. Consciously or not, confidential information resides in Mr. Nielsen's head and could influence any number of decisions—such as what witnesses to call and what questions to ask, which defendants have information potentially harmful to themselves and others, and whether to settle with certain defendants and for how much. For example, if a Defendant had negotiated with Connecticut, and Mr. Nielsen knew from those discussions that the Defendant had set aside a certain amount to settle all claims, he could use that information to benefit his new clients, and disadvantage the Defendant in any negotiations here (regardless of whether he explicitly shares the information with other Lowey attorneys or his new clients). Mr. Nielsen admitted that he has

---

[3] If the Court found that the confidential information obtained from government settlement negotiations was the *only* CGI possessed by Mr. Nielsen, and he and Lowey appropriately ensured that Lowey has not been infected by this particular confidential settlement information yet, then disqualification of Mr. Nielsen alone may be sufficient.

CGI that other plaintiffs do not, and because that information *could* be used to Defendants' material disadvantage, Mr. Nielsen has violated Rule 1.11(c). The Report erred in concluding otherwise.

*Second*, the Report acknowledges that "Attorney Nielsen was of course exposed to a deep wealth of information . . . when he worked at the Connecticut Office of the Attorney General for multiple years." Report at 15. Yet, the Report attempts to sweep this aside by concluding that it is only Defendants' "supposition" that Mr. Nielsen must "have something in his head that no one else knows and that was not shared." *Id.* But (even beyond Mr. Nielsen's concession which undermines the Report's conclusion), Defendants do not need to speculate. Individual defendants *know* what confidential information they have provided to Mr. Nielsen that they still expect to be confidential, including through attorney proffers and settlement negotiations. Nothing more is needed, but Defendants also offered to provide specific examples *in camera and ex parte*. However, the Special Master was only willing to receive the information on the condition it was also shared with Plaintiffs, which would destroy the very confidentiality Defendants seek to protect. Defendants also *know* confidential information was provided to Mr. Nielsen by third parties, including through witness interviews and communications with other government agencies. To characterize Defendants' representations as mere "speculation" is unfounded.

*Third*, the Report erred in accepting Lowey's faulty assertion that the Court's pre-trial orders required that "all of the State AG investigatory material produced into MDL discovery" be shared with private plaintiffs (subject to a limited claw-back). *Id.* at 18. Not true. The Court's orders did not require or even allow that *all* investigatory information be shared with private plaintiffs. Instead, the Court orders required State Plaintiffs to "provide Private Plaintiffs and Defendants access to all 'AG Documents' (as defined in the Order at 3 ¶2)." ECF No. 3715-5, PEX 4 at 8; ECF No. 841, PTO 70, Ex. A ¶ 6. The definition of "AG Documents" in the Order at

3 ¶2 includes only "*documents* obtained through the use of investigative subpoenas under Connecticut law, including evidence of communication, corporate structure, market reports, transaction data, and phone records obtained from telephone carriers through investigative subpoenas (collectively, the "AG Documents")." ECF No. 3715-14, PEX 13 at 3 (emphasis added). That is all the Court ordered to be disclosed. Lowey repeatedly advanced the contrary claim that the Court ordered all AG investigatory materials disclosed. ECF No. 3715, Opp. at 14, 19[4], Nielsen Decl. ¶ 16.[5] Both Plaintiffs' experts adopted and relied heavily upon this defective claim. *See* ECF No. 3715-2, Roiphe Report ¶ 14[6], ECF No. 3715-3, Cohen Report ¶ 16. And the Report erroneously adopted it. But it is simply not true.

Moreover, the orders *exclude* from production much of the confidential information underlying this Motion:

> Access to certain documents created by a Party or Non-Party specifically for provision to the State Plaintiffs – such as **transmittal letters** to the State Plaintiffs, **presentations** to the State Plaintiffs, **documents created by counsel** for the purpose of aiding the State Plaintiffs' investigation, **white papers** to the State Plaintiffs, and **other correspondence** with the State Plaintiffs regarding the investigation – **will not be produced by the State Plaintiffs** . . . .

---

[4] After acknowledging the limited definition of "AG Documents" used in the Private Plaintiffs' motion (ECF No. 3715-12, PEX 11 at 1) and the Court's Order (PEX 13 at 3), "'AG Documents' (subpoenas issued by States and documents produced in response to subpoenas)", Opp. at 7, Lowey claimed in the next paragraph that the Court ordered disclosure of "all of the State AG investigatory material," *id.* at 8, then continued asserting that false claim.

[5] If Mr. Nielsen disclosed more than he was permitted to disclose pursuant to PTO 70 and Connecticut General Statute 35-42(c)(2), then other sanctions may be warranted. Regardless, he cannot defend against disqualification by relying on improper disclosure of information.

[6] Ms. Roiphe, citing Nielsen's Declaration, relied on the false premise that "[t]he court issued a series of pretrial orders designed to ensure that the parties had access to all the same materials, including all responses to state investigatory subpoenas." Roiphe Report ¶14. Similarly, Mr. Cohen also relied on the false premise that "[p]ursuant to those Court Orders, the States produced all their investigatory materials into the discovery record in MDL 2724." Cohen Report ¶16. The Report credits the experts' reports for their analyses of the procedural history, but the experts relied on Nielsen's Declaration for this "fact," which is readily disproven by the actual Court Orders.

PTO 70, Ex. A ¶ 12 (emphasis added). As an Assistant Attorney General, Mr. Nielsen gathered information within this list, including during attorney proffers, witness interviews, and settlement negotiations, as well as summaries of such materials prepared by counsel, and was and is bound to not disclose it. The Report's adoption of Plaintiffs' spurious description of the Court's pre-trial orders fatally undermines both the premise that all CGI was available to (and shared with) other plaintiffs and the Report's ultimate conclusion.

*Third*, the Report incorrectly presumes that Nielsen was *allowed* to "broad[ly] share[] . . . confidential material" to other plaintiffs under "Common Interest Agreements." Report at 18. Not so. Connecticut General Statute § 35-42(c)(2) provides that "[a]ll documentary material or other information *furnished voluntarily to the Attorney General* … for suspected violations of the provisions of [the Act] … shall not be available to the public." (emphasis added); *see also id.* § 35-42(c)(1) (prohibiting material furnished to the AG to be available to the public). This statute "bar[s] disclosure of *material and information* gathered in an antitrust investigation pursuant to § 35-42 to all persons outside of the attorney general's office, with the exception of officials of other states and the federal government." *Brown & Brown, Inc. v. Blumenthal*, 1 A.3d 21, 35-36 (Conn. 2010) (emphasis added). While the Court's pre-trial orders overrode this statutory bar with respect to *subpoenaed documents*, they did not extend to *other information* covered by § 35-42.

The Report largely ignores this fact, stating in a footnote that even if Connecticut law prohibited such disclosure that "it would seem very odd to conclude that information that was disclosed in the MDL – *and that everyone has* – is still 'confidential' information that cannot be used under Rule 1.11." Report at 12-13, n.8. But that misses the point. The information was confidential when provided (per statute), and any material or information not authorized by court order never should have been disclosed (everyone should *not* have it). Wrongful disclosure does

not strip it of its confidentiality. If wrongful disclosure stripped CGI of its status, then Rule 1.11(c) would be rendered toothless—CGI could never be used to the material disadvantage of another party because it would cease to be CGI as soon as it was shared or used. Further, the definition of CGI does not turn on whether plaintiffs *have* the information; it turns on whether the "government is prohibited by law from disclosing *to the public* … and which is *not otherwise available to the public*." PRPC 1.11(c) (emphasis added). The Report reads into the Rule exceptions that do not exist. *See* Wendel Reply ¶ 9. The information at issue here is both prohibited from being made available to the *public* and is not available to the *public*. The fact that certain *plaintiffs* might possess it (wrongfully or not) is of no moment. A disclosure under a common interest agreement is not a disclosure to the public, nor is it a right to use the information, nor a right to make the information publicly available. The Report's conclusion to the contrary was in error.

*Finally*, the Report mistakenly concluded all "investigatory materials gathered by the Connecticut Office of the Attorney General were available through routine discovery tools" and thus fell outside the definition of "confidential government information." Report at 17. The Report reasoned that because the "investigatory materials" were gathered under *civil* investigative demands, they must be available to plaintiffs in discovery in this MDL. *Id.* (citing *In re Nat'l Prescription Opiate Litig.*, 2024 WL 3387288, at *10 (N.D. Ohio, Mar. 18, 2024)). But nowhere near all material at issue here was gathered through CIDs. Indeed, much of the material at issue was not, as it involved proffer meetings, settlement discussions, witness interviews, oral or written presentations and communications, work product, and privileged materials gathered and provided outside of the CID process. And there is no authorization that would allow those materials—let alone *all* of those materials—to be available to private plaintiffs in discovery. The Report's contrary conclusion must be set aside.

Accordingly, the Report erred in concluding that Mr. Nielsen has not violated Rule 1.11(c).

**B.    The Report Erred in Applying the *Boy Scouts* Factors**

The conclusion in the Report that even if Nielsen violated Rule 1.11(c) the *Boy Scouts* factors weigh against disqualification is also erroneous and should be set aside. ***No court has allowed an attorney to continue representation after finding a Rule 1.11(c) violation.*** *See*, *e.g.*, *Kronberg*, 2010 WL 1443934, at \*3-5 (ordering disqualification); *Villaspring*, 2011 WL 5330790, at \*4-6 (same); *In re Nat'l Prescription Opiate Litig.*, 2019 WL 1274555, at \*4-5 (same). This is because Rule 1.11(c) violations not only create the risk of prejudice to the opposing party but also to the judicial process. While the Report concludes that the *Boy Scout* factors weigh against disqualification (Report at 19), the Report does not grapple with Defendants' caselaw and it does not meaningfully engage with the *Boy Scouts* factors. When such analysis is conducted, it leads to only one conclusion—disqualification is the only appropriate remedy.

The first *Boy Scouts* factor is "the ability of the litigants to retain loyal counsel of choice." Report at 19. While Molina and Humana's right to choose counsel may merit weight, it is not sacrosanct, and parties' chosen counsel are routinely disqualified for rules violations. *See*, *e.g.*, *Henry*, 2001 WL 1003224, at \*7 ("[W]hile a party's right to counsel of its choice is important … such considerations must yield to the ethical considerations that bear upon the integrity of the judicial process."). The ability to retain loyal counsel does not include adding an attorney who unfairly prejudices the opposing parties and threatens the integrity of the proceedings. And, if Lowey had timely screened Mr. Nielsen as the rules provide, other attorneys in the firm could have continued the representation. Defendants should not have to shoulder the consequences of that failure. Because of the substantial unfair prejudice that Defendants would face by Molina and Humana's choice of counsel, this factor weighs in favor of disqualification.

-13-

The second *Boy Scouts* factor is "the ability of attorneys to practice without undue restriction." Report at 19. Removing Mr. Nielsen from this case does not interfere with his ability to practice law. The ethical conflict here relates solely to the *Generics*-related matters that are related to the ones he investigated and litigated. His ability to represent Molina and Humana, or any other client, in any other matter is unfettered. Indeed, Lowey is a prominent firm that handles cases for myriad clients across the country and has an active docket. They and Mr. Nielsen may be free to work on any of them, meaning this factor weighs in favor of disqualification.

The third factor is litigation strategy, and the Report finds that disqualification would adversely affect Humana's bellwether case. *Id.* But that is the result of Humana's decision to engage Mr. Nielsen at the eleventh hour; it filed its complaint in 2018 and litigated without him for seven years. Then, just as expert discovery, summary judgment, and pre-trial proceedings were about to kick off, Lowey recruited Mr. Nielsen and brought him over to try the bellwether case. Indeed, Lowey and Humana explained that it was precisely because Mr. Nielsen had insider government information that they were bringing him on to tilt the playing field in their clients' favor. *See* Lowey Dannenberg, Profile of Mr. Nielsen at https://lowey.com/project/joseph-nielsen/. Thus, it is Lowey and Mr. Nielsen who put the coordinated efforts of the MDL Court at risk, and this factor weighs in favor of disqualification.

The fourth factor is "preserving the integrity of legal proceedings." Report at 19. "The most significant policy weighing in favor of disqualification is the court's interest in 'protecting the integrity of the proceedings and maintaining public confidence in the judicial system.'" *Jordan v. Phila. Hous. Auth.*, 337 F. Supp. 2d 666, 678 (E.D. Pa. 2004) (citation omitted). There is a significant threat to the judicial process. Mr. Nielsen was the former lead enforcer and the very public face of the government's case. It is clear, particularly to those who provided information to

-14-

him in that capacity, that he has a wealth of information gained because of that position. Now, he has taken all he gained through his government powers to benefit some private plaintiffs. Mr. Nielsen's possession of this information while representing private plaintiffs risks eroding public trust and the integrity of these proceedings, which weighs in favor of disqualification.

Mr. Nielsen possessing information he gained through his government investigation and litigation also unfairly prejudices Defendants, which is the fifth and final *Boy Scouts* factor. Report at 19. The CGI he was provided during interviews of witnesses and cooperators and meetings with agencies and counsel representing some Defendants could be used, even inadvertently, to unfairly prejudice the Defendants. The Report does not dispute this, but it wrongly concluded that *all* CGI has already been shared. As demonstrated above, that is not true. As a result, the reliance on this incorrect fact is misplaced and this factor weighs heavily in favor of disqualification.

Another error pervades the Report's analysis: it does not distinguish between the relief sought against Mr. Nielsen and the relief sought against Lowey, even though the analysis of certain factors would materially differ. For example, even if one found that certain factors weighed in favor of Humana and Molina continuing with Lowey as their counsel, those factors do not support the conclusion they must also be able to engage Mr. Nielsen. Having litigated their cases without Mr. Nielsen for the first seven years, it strains credulity that they would suffer prejudice if they could not proceed with Mr. Nielsen now. Similarly, the impact on scheduling, if any, is different depending on the scope of disqualification. For these reasons, the Report erred in recommending against disqualification, and the Report's recommendation on that point should be set aside.

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court set aside the Report and order the disqualification of Mr. Nielsen and Lowey.

Dated: January 29, 2026

Respectfully submitted,

*/s/ Jeffrey C. Bank*
Jeffrey C. Bank
Seth C. Silber
WILSON SONSINI GOODRICH &
ROSATI
1700 K Street, NW, 5th Floor
Washington, D.C. 20006
Telephone: (202) 973-8800
Facsimile: (866) 974-7329
jbank@wsgr.com
ssilber@wsgr.com

*/s/ George G. Gordon*
George G. Gordon
Julia Chapman
Forrest Lovett
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104-2808
Tel: (215) 994-2382
Fax: (215) 655-2240
george.gordon@dechert.com
julia.chapman@dechert.com
forrest.lovett@dechert.com

Chul Pak
Michael Sommer
WILSON SONSINI GOODRICH &
ROSATI
31 West 52nd Street, Fifth Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (866) 974-7329
cpak@wsgr.com
msommer@wsgr.com

*Counsel for the Mylan Defendants*

D. Brett Kohlhofer
Christie Boyden
DECHERT LLP
1900 K Street NW
Washington, D.C.
Tel: (202) 261-3300
Fax: (202) 261-3333
d.brett.kohlhofer@dechert.com
christie.boyden@dechert.com

*/s/ David Fioccola*
Grant Esposito
David Fioccola
PROSKAUER ROSE LLP
Eleven Times Square New York, NY
10036
Tel: (212) 969-3000
Fax: (212) 969-2900
gesposito@proskauer.com
dfioccola@proskauer.com

*Attorneys for Defendant Lannett
Company, Inc.*

-16-

-17-

/s/ Robin D. Adelstein
Robin D. Adelstein
Mark A. Robertson
Kimberly Fetsick
Abigail Schwarz
Dewey Jude Gonsoulin, III
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY 10019-6022
Telephone: (212) 318-3000
Facsimile: (212) 408-5100
robin.adelstein@nortonrosefulbright.com
mark.robertson@nortonrosefulbright.com
kimberly.fetsick@nortonrosefulbright.com
abigail.schwarz@nortonrosefulbright.com
dewey.gonsoulin@nortonrosefulbright.com


Mark Angland
NORTON ROSE FULBRIGHT US LLP
779 9th Street NW, Suite 1000
Washington, DC 20001
Telephone: (202) 662-0200
Facsimile: (202) 662-4643
mark.angland@nortonrosefulbright.com

*Counsel for Defendants Bausch Health
Americas, Inc.; Bausch Health US LLC;
Oceanside Pharmaceuticals, Inc.*

Christopher Ondeck
PROSKAUER ROSE LLP
1001 Pennsylvania Ave., NW
Suite 600 South
Washington, DC 20004
Tel: (202) 416-5865
Fax: (202) 416-6899
ondeck@proskauer.com

*Counsel for Defendants Sandoz Inc.
and Fougera Pharmaceuticals Inc.*


/s/ Steven E. Bizar
Steven E. Bizar
Agnese Whitt
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104
Tel: (215) 994-4000
steven.bizar@dechert.com
agnese.whitt@dechert.com

*Counsel for Citron Pharma, LLC*

/s/ Donald W. Hawthorne
Donald W. Hawthorne
CURTIS, MALLET-PREVOST, COLT &
MOSLE LLP
101 Park Avenue
New York, NY 10178
T: 212-696-6949
dhawthorne@curtis.com

*Counsel for Defendant Breckenridge
Pharmaceutical, Inc.*

/s/ Sheron Korpus
Sheron Korpus
Seth A. Moskowitz
Seth Davis
KASOWITZ LLP
633 Broadway
New York, New York 10019 Tel:
(212) 506-1700
Fax: (212) 506-1800
skorpus@kasowitz.com
smoskowitz@kasowitz.com
sdavis@kasowitz.com

*Counsel for Defendants Teva
Pharmaceuticals USA, Inc., Barr
Pharmaceuticals, Inc., Pliva, Inc.,
Actavis Elizabeth, LLC, Actavis
Holdco U.S., Inc., and Actavis
Pharma, Inc.*

/s/ Brian T. Feeney
Brian T. Feeney
GREENBERG TRAURIG, LLP
1717 Arch Street
Suite 400
Philadelphia, PA 19103
Tel.: (215) 988-7812
Fax: (215) 717-5265
brian.feeney@gtlaw.com

/s/ April N. Williams
April N. Williams
Claire Bergeron
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, D.C. 20037
Tel: (202) 663-6000
Fax: (202) 663-6363
april.williams@wilmerhale.com
claire.bergeron@wilmerhale.com

Roger B. Kaplan
Aaron Van Nostrand
GREENBERG TRAURIG, LLP
500 Campus Drive, Suite 400
Florham Park, NJ 07932
Tel.: 973.360.7900
Fax: 973.301.8410
kaplanr@gtlaw.com
vannostranda@gtlaw.com

Terry M. Henry
Melanie S. Carter
BLANK ROME LLP
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
Tel: (215) 569-5644
Fax: (215) 832-5644
THenry@blankrome.com
MCarter@blankrome.com

*Counsel for Defendant Dr. Reddy 's
Laboratories, Inc.*

*Attorneys for Defendant Apotex Corp.*

/s/ Carlos Ortiz
Carlos Ortiz
Kayley B. Sullivan
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Email: kbsullivan@bakerlaw.com
Email: cortiz@bakerlaw.com


Mary Pat Brogan
BAKER & HOSTETLER LLP
127 Public Square #2000
Cleveland, OH 44114
Telephone: (216) 861-7020
Email: mbrogan@bakerlaw.com

*Counsel for Defendants Heritage
Pharmaceuticals Inc., Emcure
Pharmaceuticals, Ltd., and Satish Mehta*

/s/ John M. Taladay
John M. Taladay
Christopher P. Wilson
Edward W. Duffy
JoAnna B. Adkisson

/s/ J. Clayton Everett, Jr.
J. Clayton Everett, Jr.
William S.D. Cravens
Molly R. Maidman
Y. Frank Ren
MORGAN, LEWIS & BOCKIUS
LLP 1111 Pennsylvania Avenue, NW
Washington, DC 20004 Telephone:
+1.202.739.3000 Facsimile:
+1.202.739.3001
clay.everett@morganlewis.com
william.cravens@morganlewis.com
molly.maidman@morganlewis.com
frank.ren@morganlewis.com


Harvey Bartle IV
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA 19103
Telephone: +1.215.963.5000
Facsimile: +1.215.963.5001
harvey.bartle@morganlewis.com

*Counsel for Defendants Perrigo New
York, Inc., Perrigo Company plc*

/s/ Douglas M. Tween
Douglas M. Tween
LINKLATERS LLP
1290 Avenue of the Americas
New York, NY 10104
Tel: (212) 903-9072
douglas.tween@linklaters.com

*Counsel for Defendant Strides Pharma, Inc.*

Michael A. Munoz
BAKER BOTTS LLP
700 K Street NW
Washington, DC 20004
Telephone: (202) 639-7700
Facsimile: (202) 639-7890
john.taladay@bakerbotts.com
christopher.wilson@bakerbotts.com
ed.duffy@bakerbotts.com
joanna.adkisson@bakerbotts.com
michael.munoz@bakerbotts.com

Matthew M. Hilderbrand
BAKER BOTTS LLP
401 South 1st Street, Suite 1300
Austin, TX 78704
Telephone: (512) 322-2500
Facsimile: (512) 322-3613
matthew.hilderbrand@bakerbotts.com

Lauri A. Kavulich
CLARK HILL PLC
2001 Market Street, Suite 2620
Philadelphia, PA 19103
Telephone: (215) 640-8500
Facsimile: (215) 640-8501
lkavulich@clarkhill.com

Lindsay S. Fouse
CLARK HILL PLC
301 Grant St, 14th Floor
Pittsburgh, PA 15219
Telephone: (412) 394-7711
Facsimile: (412) 394-2555
lfouse@clarkhill.com

*Counsel for Defendants Sun Pharmaceutical
Industries, Inc., Mutual Pharmaceutical
Company, Inc., Taro Pharmaceuticals
U.S.A., Inc. and Taro Pharmaceutical*

*/s/ Jason R. Parish*
Jason R. Parish
BUCHANAN INGERSOLL & ROONEY PC
1700 K Street, NW, Suite 300
Washington, D.C. 20006
Tel.: (202) 452-7900
Fax: (202) 452-7989
Email: jason.parish@bipc.com

Bradley J. Kitlowski
BUCHANAN INGERSOLL & ROONEY PC
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219
Tel.: (412) 562-8800
Fax: (412) 562-1041
Email: bradley.kitlowski@bipc.com

Caroline B. Warren
BUCHANAN INGERSOLL & ROONEY PC
Carillon Tower
227 West Trade Street, Suite 600
Charlotte, NC 28202
Tel.: (704) 444-3371
Fax: (704) 444-3490
Email: caroline.warren@bipc.com

*Counsel for Defendant Zydus
Pharmaceuticals (USA) Inc.*

*/s/ Stephan Matanovic*
Stephan Matanovic (Pa. No. 83459)
Bailey Duquette P.C.
57 N. 2nd Street, 2nd Floor
Philadelphia, PA 19106
215.660.7600
stephan@baileyduquette.com

-20-

/s/ Benjamin H. Diessel
Benjamin H. Diessel
Ariela C. Anhalt
Emmett Gilles
WIGGIN AND DANA LLP
One Century Tower
265 Church Street
New Haven, CT 06510
Tel: (203) 498-4400
Fax: (203) 782-2889
bdiessel@wiggin.com
aanhalt@wiggin.com
egilles@wiggin.com

Nathan E. Denning
Gabriella E. Bensur
Chloe S. Booth
Michael W. Kucharski
WIGGIN AND DANA LLP
437 Madison Avenue, 35th Floor
New York, NY 10022
Tel: (212) 551-2600
Fax (212) 551-2888
ndenning@wiggin.com
gbensur@wiggin.com
cbooth@wiggin.com
mkucharski@wiggin.com

Christopher Bailes
WIGGIN AND DANA LLP
50 S. 16th Street, Suite 2925
Philadelphia, PA 19102
Tel: (215) 998-8318
Fax: (215) 988-8384
cbailes@wiggin.com

*Counsel for Defendant Aurobindo Pharma USA, Inc.*

James Bailey
Bailey Duquette P.C.
104 Charlton St., 1W
New York, NY 10014
212.658.1946
james@baileyduquette.com

Darrell Prescott
Darrell Prescott Law Office P.C.
104 Charlton Street, 1-W
New York, NY
(917) 510-3165
dp@darrellprescott.com

*Counsel for Defendant G&W Laboratories, Inc.*

/s/ Peter G. Siachos
Peter G. Siachos
GORDON REES SCULLY MANSUKHANI LLP
677 King Street, Suite 450
Charleston, SC 29403
Telephone: (843) 278-5900
Facsimile: (843) 804-4691
psiachos@grsm.com

-22-

*/s/ W. Gordon Dobie*
W. Gordon Dobie
Frank A. Battaglia
WINSTON & STRAWN LLP
35 W. Wacker Dr.
Chicago, IL 60601
Tel: (312) 558-5600
Fax: (312) 558-5700
wdobie@winston.com

Irving Wiesen
LAW OFFICES OF IRVING L. WIESEN,
P.C.
420 Lexington Ave. – Suite 2400
New York, NY 10170
Tel: (212) 381-8774
Fax: (646) 536-3185
iwiesen@wiesenlaw.com

*Counsel for Defendant Ascend
Laboratories, LLC*

*/s/ Ilana H. Eisenstein*
Ilana H. Eisenstein
Whitney Cloud
Ben C. Fabens-Lassen
DLA PIPER LLP (US)
1650 Market Street, Suite 5000
Philadelphia, PA 19103
Telephone: (215) 656-3300
ilana.eisenstein@dlapiper.com
whitney.cloud@dlapiper.com
ben.fabens-lassen@dlapiper.com

*Counsel for Defendants Pfizer Inc.
and Greenstone LLC*

Clair E. Wischusen
GORDON REES SCULLY MANSUKHANI
LLP
277 S. Washington Street, Suite 550
Alexandria, VA 22314
Telephone: (703) 650-7030
Facsimile: (202) 800-2999
cwischusen@grsm.com

*Counsel for Defendant Epic Pharma, LLC*

-23-

*/s/ Brian J. Smith*
Brian J. Smith
WILSON SONSINI GOODRICH &
ROSATI
Professional Corporation
1700 K Street, NW, 5th Floor
Washington, D.C. 20006
Telephone: (202) 973-8800
Facsimile: (866) 974-7329
brian.smith@wsgr.com

*Admitted only in Illinois & Maine

*Counsel for Defendant Mayne Pharma
Inc.*

-24-

## **CERTIFICATE OF SERVICE**

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served on January 29, 2026, with a copy of this document via the Court's CM/ECF system.

*/s/ Jeffrey C. Bank*
Jeffrey C. Bank