**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL 2724<br>16-MD-2724<br>HON. CYNTHIA M. RUFE |
| THIS DOCUMENT RELATES TO: | Civil Action Nos. |
| *Providence St. Joseph Health, et al., v. Actavis Holdco U.S., Inc., et al.* | 23-cv-03636-CMR |
| *United Healthcare Services, Inc., v. Actavis Holdco U.S., Inc., et al.* | 19-cv-00629-CMR |
| *1199SEIU National Benefit Fund, et al., v. Actavis Holdco U.S., Inc. et al.* | 19-cv-06011-CMR |
| *CVS Pharmacy, Inc., v. Actavis Elizabeth, LLC, et al.* | 20-cv-06310-CMR |
| *Rite Aid Corp., et al. v. Actavis Holdco U.S., Inc., et al.* | 20-cv-03367-CMR |
| *The Kroger Co., et al v. Actavis Holdco U.S. Inc., et al,* | 18-cv-00284-CMR |
| *J M Smith Corporation v Actavis Holdco U.S. Inc., et al.,* | 20-cv-04370-CMR |
| *Walgreen Company, v Actavis Holdco U.S. Inc., et al.,* | 20-cv-06258-CMR |
| *Humana Inc. v. Actavis Elizabeth, LLC, et al.* | 18-cv-03299-CMR |
| *Molina Healthcare, Inc., v. Actavis Elizabeth, LLC, et al.* | 20-cv-00695-CMR |
| *Health Care Service Corp. v. Actavis Elizabeth, LLC, et al.* | 19-CV-5819-CMR |

**MEMORANDUM OPINION and ORDER**

In this nearly decade-old multidistrict litigation ("MDL"), dozens of Plaintiffs allege that numerous Defendants engaged in an antitrust conspiracy to allocate the market for and fix the prices of certain generic pharmaceutical products. The genesis of this litigation and the broad outline of the

complaints that are now at issue are similar to those recounted in a prior opinion in this MDL.[1] That

opinion generally found that several complaints filed by state, individual and class plaintiffs properly

alleged that several generic pharmaceutical companies, including Epic Pharma LLC ("Epic"), the

Defendant whose eleven motions to dismiss for failure to state a claim are at issue now, engaged in an

overarching multi-drug conspiracy.

## I. BACKGROUND

Several individual plaintiffs—vendors, distributors, insurance companies, health systems and

other entities that purchased various generic pharmaceuticals but did not join the class action lawsuits, as

well as members of class actions filed in this MDL against generic drug manufacturers and vendors—

filed additional complaints, either individually or in combination as co-plaintiffs, alleging similar

violations by several generic drug manufacturers and distributors of scores of generic drugs.[2] The eleven

complaints, all amended or supplemented after their original filing, accuse Epic of violating federal or

state laws outlawing anti-competitive practices and profiting from them. The laws on which the

complaints rest differ, but there is overlap. They include the Sherman Act[3], the Clayton Act[4], discussed in

prior opinions in the MDL,[5] as well as the laws of several states outlawing anti-competitive activities and

---

[1] *See e.g., State AG Litig. v. Actavis Holdco U.S. (In re Generic Pharms. Pricing Antitrust Litig.)*, 394 F. Supp. 3d 509, 514-23 (E.D.Pa. 2019). *See also Marion Diagnostic Ctr, LLC v. McKesson Corp. (In re Generic Pharms, Pricing Litigation)*, 386 F.Supp. 3d 477 (E.D.Pa. 2019) *In re Generic Pharms, Pricing Litigation* 338 F.Supp. 3d 404 (E.D.Pa., 2018);

[2] The Plaintiffs are involved in other complaints lodged against Epic and other manufacturers, either as named plaintiffs or members of a plaintiff class.

[3] 15 U.S.C. §1 and 2.

[4] 15 U.S.C. §15.

[5] *Humana Inc. v. Actavis Elizabeth, LLC, et al.* 2:18-cv-03299, and *1199SEIU National Benefit Fund, et al. v. Actavis Holdco U.S., Inc., et al.*, 2:19-cv-6011, were, along with other complaints, both subjects of motions to dismiss decided in their favor in *In re Generic Pharms, Pricing Litigation* 338 F.Supp. 3d 404, *supra.* at n.1

profiting from them.

In this memorandum opinion, the Court considers Epic's motions to dismiss claims against it in eleven amended complaints[6] regarding its sale of Ursodiol.[7]

## II. STANDARD OF REVIEW

Rule 12(b)(6) allows dismissal of a complaint for failure to state a claim upon which relief can be granted. "A complaint, at a minimum, must contain "a short and plain statement of the claim showing the plaintiff is entitled to relief."[8] The complaint must allege sufficient facts that, if accepted as true, state a facially plausible claim.[9] *Twombly* and *Iqbal* require a court reviewing a motion to dismiss to take three steps. First, it must ensure that the complaint states the elements required to state a claim. Second, it must

---

[6] *Providence St. Joseph Health, et al., v. Actavis Holdco Inc. U.S., Inc., et al.,* 5:23-cv-03636 (hereinafter "*Providence*") [Doc. Nos. 215, 262]; *1199SEIU National Benefit Fund, et al. v. Actavis Holdco U.S., Inc., et al.* (hereinafter "*1199*"), 2:19-cv-6011 [Doc. Nos. 85, 273]; *CVS Pharmacy, Inc., v. Actavis Elizabeth, LLC, et al.* (hereinafter "*CVS*"), 2:20-cv-06310 [Doc. Nos. 187, 196]; *Health Care Service Corp. v. Actavis Elizabeth, LLC, et al.* (hereinafter "*HCSC*"), 2:19-cv-5819, [Doc. Nos. 42, 222]; *Humana Inc. v. Actavis Elizabeth, LLC, et al.* (hereinafter "*Humana*"), 2:18-cv-03299 [Doc. Nos. 109, 313]; *J M Smith Corp. v. Actavis Holdco U.S., Inc., et al.* (hereinafter "*JM Smith*") 2:20-cv-04370 [Doc. Nos. 200, 213]; *Molina Healthcare, Inc. v. Actavis Elizabeth, LLC, et al.* (hereinafter "*Molina*"), 2:20-cv-695 [Doc. Nos. 57, 232]; *Rite Aid Corp., et al. v. Actavis Holdco U.S., Inc., et al.* (hereinafter "*Rite Aid*"), 2:20-cv-03367, [Doc. Nos. 26, 217]; *The Kroger Co., et al. v. Actavis Holdco U.S., Inc., et al.* (hereinafter "*Kroger*") 2:18-cv-00284, [Doc. Nos. 231, 387]; *United HealthCare Services, Inc. v. Actavis Holdco U.S., Inc., et al.*, (hereinafter "*United*"), 2:19-cv-00629 [Doc. Nos. 169, 179]; *Walgreen Company v. Actavis Holdco U.S., Inc., et al.* (hereinafter "*Walgreen*"), 2:20-cv-06258 [Doc. Nos. 179, 190]. Epic also filed a motion to dismiss claims against it in *MSP Recovery Claims, Series LLC, et al. v. Actavis Elizabeth LLC, et al.*, 2:20-cv-00231, but that complaint was later voluntarily dismissed. *Id.*, [Doc. Nos. 266, 267].

[7] Ursodiol is a drug used to dissolve gallstones and treat primary biliary cirrhosis, among other conditions.

[8] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[9] *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

identify allegations that are merely conclusory and therefore not entitled to the presumption of truth. Finally, the Court must assume the truth of well-pleaded factual allegations and determine whether they plausibly entitle the plaintiff to relief.[10] The complaint must show more than a mere possibility that a defendant acted unlawfully.[11] The complaint's allegations need not rule out all innocent explanations.[12] Still, in the antitrust context, it must contain "enough factual matter (taken as true) to suggest an agreement [to violate the law] was made."[13]

### III.    DISCUSSION

### A.    Epic's Motions to Dismiss and the Plaintiffs' Consolidated Response

Epic's eleven motions to dismiss do not assert that the complaints fail to generally and plausibly allege an overarching conspiracy to violate antitrust and anti-competition laws, nor do they assert that the complaints fail to generally and plausibly allege violations of several state laws proscribing unjust enrichment or unfair trade practices. Rather, Epic's eleven motions to dismiss assert that the complaints do not describe any anti-competitive or conspiratorial activity on its part. Epic filed separate and distinct motions to dismiss each of the eleven complaints at issue.[14] Epic's motions identified distinct and specific deficiencies in each complaint. The Plaintiffs, however, filed a joint response, choosing to gloss over Epic's specific allegations and treating the twelve complaints as chapters in a book, as if they were interdependent, despite being filed at different times and by different parties. They are not. The Plaintiffs'

---

[10] *Connelly v. Lane Construction Corp,* 809 F.3d 780, 786 (3d Cir. 2016).

[11] *Iqbal*, 556 F.3d  at 678.

[12] *In re Niaspan Antitrust Litig,* 810 F. Supp. 3d. 735, 753 (E.D.Pa. 2014).

[13] *Twombly*, 550 U.S. at 556.

[14] *Providence*, Doc. No. 262; *1199*, Doc. No. 273; *CVS*, Doc. No. 196; *HCSC*, Doc. No. 222; *Humana*, Doc. No. 313; *JM Smith*, Doc. No. 213; *Molina*, Doc. No. 232; *Rite Aid*, Doc. No. 217; *Kroger*,  Doc. No. 387; *United*, Doc. No. 179; *Walgreen*, Doc. No. 190.

consolidated response to the motions to dismiss invites this Court, though, to fill in elements that might be missing from some with allegations in others.[15] As if in justification, the Consolidated Response says, "[T]his Court need not decide whether it is more probable that Epic entered the Ursodiol conspiracy as part of the overarching conspiracy or coincidentally alongside the overarching conspiracy. Plaintiffs' allegations, taken together and viewed in the context of the Operative Complaints[16] as a whole, easily satisfy the *Twombly* plausibility standard and sufficiently tie Epic to the overarching conspiracy at this stage of the litigation."[17] This wink does not merit a nod. Each complaint stands or falls on its own.

Epic's twelve motions to dismiss, all filed on May 5, 2025, generally allege:

- Plaintiffs fail to state claims against Epic for conspiracy related to Ursodiol.
- Plaintiffs fail to allege circumstantial evidence sufficient to suggest Epic agreed to violate federal and state laws.
- Plaintiffs fail to plausibly allege Epic's involvement in an overarching multi-drug conspiracy;
- Plaintiffs lack standing to recover damages under federal antitrust law; and,
- Plaintiffs' state law claims fail because they are entirely derivative of the complaints' deficient antitrust allegations.

Some of the motions to dismiss raise fewer issues, others break them down into sub-issues. In each one, though, Epic describes in detail the complaint each motion seeks to dismiss, and argues each complaint fails to allege that Epic did anything to violate any law or harm anyone.

All eleven amended complaints Epic seeks to dismiss allege and recite similar allegations describing an overarching conspiracy or conspiracies starting, in some complaints, as far back as 2009, in

---

[15] Some of the consolidated responses' citations to the complaint ask the Court to review dozens, and sometimes nearly one hundred, serial paragraphs of a complaint that, when read, barely describe anything Epic allegedly did to manipulate the price and distribution of Ursodiol.  Such citations are useless.

[16] "Operative Complaints" is the Consolidated Response's term for the complaints at issue here, which together total nearly nine thousand pages. Consolidated Response at 1.

[17] Consolidated Response at 13-14.

others not until 2013, between dozens of manufacturers and distributors to raise the prices and manage the distribution in the United States of scores of different generic drugs. Some of the complaints focus on the actions of two or three defendants and parrot selected allegations made in earlier complaints about other defendants and drugs. The complaints, with varying levels of detail, allege that Epic acted illegally in the sale and distribution of Ursodiol.[18] Eight of the complaints contain sufficient detail to allege that Epic, with others, conspired to raise the price of Ursodiol. The others do not.

**B.        Complaints that Sufficiently Allege Epic Conspired to Raise the Price of Ursoridol**

Eight amended complaints[19] allege Epic conspired with co-defendants Lannett Company ("Lannett") and Actavis[20] to limit price competition for Ursodiol. The allegations against Epic, taken as factual for the purposes of the motions to dismiss , are summarized as follows.On May 1, 2014, Lannett entered the market for Ursodiol, selling it at $5.11 per 300-mg unit. Six days later, on May 6, 2014, Epic raised its price for Ursodiol more than 1000%, from $0.45 per 300-mg unit to $5.10 per unit. On June 24, 2014, Actavis raised its price of Ursodiol 670% from $0.77 per 300-mg unit to $5.11. This category of complaints—eight in all—also alleges, in varying detail, the dates of several communications between representatives of Epic, Lannett, and Actavis between August 2013 and June 2014. They also claim the Plaintiffs purchased Ursodiol from Epic or its co-conspirators.[21]

These eight complaints sufficiently allege, for purposes of determining a motion to dismiss, that

---

[18]  Though the HCSC complaint alleges Epic raised prices for Verapamil along with Actavis in June 2014, *HCSC*, ¶832, its claims for relief citing Epic concern solely Ursodiol. *Id.*, ¶¶ 4215-4253.

[19] *Providence, 1199 , Humana, JM Smith, Rite Aid, Kroger,  United*, and  *Walgreen*.

[20]  The eleven complaints variously refer to three related entities—Actavis Elizabeth LLC, Actavis Pharma, and Actavis Holdco —as "Actavis."

[21] *See Providence* [¶¶ 29-30, 3541, 3354-3540];  *1199* [¶ 4n.2] (incorporating by reference *In re: Ursodiol* Cases, Doc. 113]); *Humana* [¶¶ 9, 686-695, 750]; *JM Smith* [¶¶ 20, 2289-2304]; *Rite Aid* [¶¶ 28, 2289-2304]; *Kroger* [¶¶ 13, 18-20, 2266-2281]; *United* [¶¶44, 51, 2289-2304]; *Walgreen* [¶¶ 2252-2267].

Epic conspired with Lannett and Actavis to raise and control the price of Ursodiol. The allegations of direct contact between Epic and Lannett and Actavis, as well as only between Actavis and Lannett, all occurring within ten months before the time of the May and June 2014 Epic and Actavis price increases and Lannett's entry into the Ursodiol market at a similar price, support the Plaintiffs' allegations of parallel conduct. An allegation that competitors acted in parallel to significantly increase the price of a product supports an allegation of concerted anticompetitive conduct.[22]

The allegations of parallel conduct are also supported by three of the "plus factors" necessary to demonstrate the parallel conduct was consistent with coordinated action— (1) motive, (2) action against self-interest, and (3) evidence of a traditional conspiracy necessary to support an allegation of an agreement.[23]  First, the eight complaints allege high barriers to entry into the manufacturing and distribution of Ursodiol.[24]  As in earlier complaints that this Court found sufficiently alleged actionable claims, the eight complaints contain  allegations [that] describe the market for  Ursodiol and other generic drugs as  restricted and hard to enter  "'as one that is highly concentrated, contains high barriers to entry, has inelastic demand, lacks reasonable substitutes, and is based on a standardized product . . .' 'High barriers to entry . . . make an industry more conducive to collusion.' They also allege that '[o]ver time, generics' pricing nears the generic manufacturers' marginal costs.' 'Declining prices or profits in a market make 'price competition more than usually risky and collusion more than usually attractive.'"[25] The eight complaints thus plausibly outline a regulatory regime that could reduce Epic's, Lannett's and Actavis'

---

[22] *In re Generic Pharms, Pricing Antitrust Litig.,* 338 F. Supp 3d at 448; *see also Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (facts that give a defendant fair notice of the grounds for a claim are sufficient to survive a motion to dismiss).

[23] *In re Ins. Brokerage Antitrust Litig.,* 618 F.3d 300, 322 (3d Cir. 2010).

[24] *See Providence* [¶¶ 354-65];  *1199* [¶ 4, n.2 (incorporating by reference *In re: Ursodiol* Cases, 16-ur-27242, [¶¶ 171-174]);] *Humana* [¶¶ 116-20]; *JM Smith* [¶¶ 104-18]; *Rite Aid* [¶¶ 74-88, 276-80, 2816-26]; *Kroger* [¶¶ 77-91]; *United* [132-41]; *Walgreen* [¶¶ 104-108].

[25] *In re Generic Pharms, Pricing Antitrust Litig.,* 338 F. Supp 3d at 448 (citations omitted).

profits by driving down generic drug prices over time and which would give them a common motive to set drug prices. The eight complaints also sufficiently allege that Epic acted against self-interest, raising its price following Lannett's increase in the absence of changes in demand or manufacturing or supply costs.[26] Finally, the eight complaints allege sufficient facts establishing a traditional conspiracy. The complaints allege that representatives of Epic, Lannett and Actavis, two or three of them at a time, met and communicated with one another in the months before and soon after the price increases. The temporal proximity of these meetings to Epic and Actavis' increases, as well as Lannett's inception of Ursodiol sales at a similar price to theirs, is a satisfactory description of a traditional conspiracy. As the complaints' state-law claims rise or fall on the sufficiency of the federal-law-based allegations, they too are sufficient to state actionable claims.

For these reasons, Epic's claim that the eight complaints are insufficient to allege that it had a role in any illegal or actionable activity to control the price of and market for Ursodiol lacks merit. If, after discovery, Epic believes the Plaintiffs lack the evidence or ability to prove their allegations, it may move for summary judgment.

**C.    Complaints that Insufficiently Plead Epic Manipulated or Conspired to Raise the Price of Ursodiol**

The remaining amended complaints supply no descriptions of Epic's actions beyond the fact that it sold a drug whose price increased by 1000%. "[T]he issue is whether the pleading delineates to some sufficiently specific degree that a defendant purposefully joined and participated in the conspiracy."[27] The complaints must raise a reasonable expectation that discovery will reveal the existence of an illegal

---

[26] *See Providence* [¶¶ 3537];  *1199* [¶ 4, n.2 (incorporating by reference *In re: Ursodiol* Cases, 16-ur-27242, [¶¶ 104-143]);] *Humana* [¶¶ 692-93]; *JM Smith* [¶ 2293]; *Rite Aid* [¶¶ 2285, 2862;]; *Kroger* [¶ 2270]; *United* [¶¶ 1028-29, 1113]; *Walgreen* [¶¶ 2256].

[27] *In re Processed Egg Prods. Antitrust Litig.,* 821 F. Supp. 2d 709, 720 (E.D. Pa. 2011). *See also Marion Diagnostic Ctr. supra.,*  386 F.Supp. 3d. at 482.

agreement.[28] The *HCSC*, *Molina*, and *CVS* complaints do not.

The *HCSC* amended complaint, without identifying Epic, alleges that the price of Ursodiol increased by 1000%, along with similar price increases for other generic drugs.[29] The amended complaint cites a 2016 government report describing extraordinary price increases for several generic drugs, including Ursodiol, but does not identify Epic as the manufacturer or one of the drug's manufacturers or vendors.[30] Finally, the amended complaint alleges that Epic entered into anticompetitive conspiracies to drive up the price of Ursodiol. This allegation, too, falls short, as the amended complaint does not describe the time, place, or act that illustrates Epic joining a conspiracy or doing anything actionable, nor does it specifically identify Epic's coconspirators in a scheme to raise the price of Ursodiol.

The *Molina* complaint's allegations against Epic are similarly vague. It cites a government report as the basis for its allegation that Ursodiol's price increased by 1000%, without saying when or how the price increase occurred, or who caused it.[31] It describes Epic's corporate identity,[32] and then, without any description of a meeting, conversation, correspondence or a general time when Epic did anything, states that Epic cooperated in an anticompetitive scheme to violate Section 16 of the Clayton Act and Sections 1 and 2 of the Sherman Act regarding Ursodiol.[33]

The *CVS* amended complaint has the least detail. It does not describe any specific act by Epic regarding Ursodiol. Instead, it contains, in an appendix, a list of Epic's trade association memberships,

---

[28] *SigmaPharm, Inc. v. Mut. Pharm. Co.*, 772 F. Supp. 2d 660, 669 (E.D. Pa. 2011) (quoting *Twombly*, 550 U.S. at 556), aff'd 454 F. App'x 64 (3d Cir. 2011).

[29] *HCSC*, ¶5.

[30] *Id.*, ¶339.

[31] *Molina*, ¶¶ 5-6.

[32] *Id.*, ¶ 267.

[33] *Id.*, ¶¶ 4400-4418.

meetings of those associations, social gatherings, that Epic's representatives attended and generalized allegations that these and other companies' representatives engaged in conspiracies to control the pricing and sale of generic drugs, tethered to complaint averments that mention other manufacturers and drugs, but neither Epic nor Ursodiol.[34] Epic is mentioned in a list of the meetings cited in the complaint,[35] and Ursodiol, only in two lists of hundreds of generic drugs sold during the alleged conspiracies.[36] The *CVS* complaint does not describe any specific act—a meeting, a phone call, or even a price hike— that Epic undertook about any specific drug. The only other mentions of Epic are a description of its corporate identity and an allegation that it marketed and sold generic drugs during the time period covered by the *CVS* complaint.[37]

The above three complaints thus fail to describe any anti-competitive conspiratorial behavior by Epic. If a conspiracy to control the price and distribution of Ursodiol existed, these complaints do not show Epic had any role in it.

**AND NOW**, this 27th day of February 2026,  Defendant Epic's motions to dismiss for failure to state a claim are **DENIED** as to

1. 23-cv-03636-CMR [Doc. No. 215]

2. 19-cv-00629-CMR [Doc. No. 1779]

3. 19-cv-06011-CMR [Doc. No. 85]

4. 20-cv-03367-CMR [Doc. No. 26]

5. 18-cv-00284-CMR [Doc. No. 231]

6. 20-cv-04370-CMR [Doc. No. 200]

---

[34] *CVS*, [¶¶ 73, 163-183].

[35] *Id.*, [Doc. 187-9, pp. 7, 11, 16, 17 and 26].

[36] *Id.*, [Doc 187-1("Appendix A; List of Price-Fixed Drugs), p. 11; Doc 187-2. ("Appendix B: Teva's Role in conspiracies related to Price Fixed Drugs), p. 9].

[37] *Id.*, ¶73.

7. 18-cv-03299-CMR [Doc. No. 109

8. 20-cv-06258-CMR [Doc. No. 179]


Defendant Epic's motions to dismiss for failure to state a claim are **GRANTED** as to

1. 19-cv-5819-CMR [Doc. No. 42]

2. 20-cv-0695-CMR [Doc. No. 57]

3. 20-cv-06310-CMR [Doc. No. 187]

It is so **ORDERED.**

**BY THE COURT:**


**/s/ Hon. Cynthia M. Rufe**

_____

Honorable Cynthia M. Rufe, J.